107 F.3d 1220
 Unempl.Ins.Rep. (CCH) P 22,174
Sally Ann VALOT, Jean Hansen, Anna D. Roosa, Plaintiffs-Appellants,
v.
SOUTHEAST LOCAL SCHOOL DISTRICT BOARD OF EDUCATION, et al.,
Defendants-Appellees.
 No. 95-3390.
 United States Court of Appeals,
Sixth Circuit.
 Argued April 18, 1996.
Decided March 6, 1997.
Rehearing and Suggestion for Rehearing En Banc Denied April
18, 1997.*
 
 Ira J. Mirkin, argued and briefed, Barry R. Laine, Bonnie D. Burdman, Green, Haines, Sgambati, Murphy & Macala, Youngstown, OH, for Plaintiffs-Appellants.
 G. Frederick Compton, Jr., Whalen & Compton, Akron, OH, Michael J. Loughman, Daniel D. Mason, argued and briefed, Warhola, O'Toole, Loughman, Alderman & Stumphauzer, Lorain, OH, for Defendants-Appellees.
 Daniel S. Smith, briefed, Ohio Education Association, Grandview Heights, OH, for Amicus Curiae Ohio Education Association.
 John S. Marshall, briefed, Spater, Gittes, Schulte & Kolman, Columbus, OH, for Amicui Curiae Ohio NOW Education and Legal Fund and Ohio Employment Lawyers Association.
 Before: ENGEL, MERRITT, and RYAN, Circuit Judges.
 ENGEL, J., delivered the opinion of the court. RYAN, J. (pp. 1230-34), delivered a separate concurring opinion. MERRITT, J. (p. 1234), delivered a separate opinion concurring in part and dissenting in part.
 
 
 1
 ENGEL, Circuit Judge.
 
 
 2
 As untenured, substitute bus drivers, Sally Ann Valot, Jean Hansen, and Anna D. Roosa applied for and obtained unemployment compensation for the summer months of 1993 during which they were unemployed, and for that reason, the Southeast Local School District Board of Education declined to rehire them for the next school year. At issue on this appeal is whether the district court erred in granting summary judgment against the bus drivers on their claims that the School Board's decision violated their rights under the federal constitution and in declining to exercise supplemental jurisdiction over their claim that that decision violated Ohio public policy. We affirm.
 
 FACTS
 
 3
 The facts of this case are, in the main, undisputed. Plaintiffs Sally Ann Valot, Jean Hansen, and Anna D. Roosa were substitute school bus drivers in the Southeast Local School District in northern Ohio. Prior to the summer of 1993, they had served in their respective positions for three or more years pursuant to consecutive nine-month contracts, tendered to them by the School Board at the beginning of each school year. Plaintiffs were not employed during the summer months.
 
 
 4
 As a matter of practice, the School Board voted at the end of each school year not to automatically renew the contracts of its substitute bus drivers. Instead, the School Board informed them that if they wished to work as bus drivers during the next school year, they should notify their supervisor who would relay this information to the Superintendent of the School Board. The Superintendent would, in turn, make recommendations to the School Board, which would then vote on whether to tender contracts to the recommended substitute bus drivers. As a general matter, the School Board almost always accepted the Superintendent's recommendations.
 
 
 5
 In the years preceding the 1993-94 school year, Plaintiffs notified their supervisor that they wished to be rehired, received a recommendation from the Superintendent that they be rehired, and were in fact rehired as substitute bus drivers. As they had before, Plaintiffs gave notification to their supervisor at the end of the 1992-93 school year that they wished to be rehired for 1993-94 school year.
 
 
 6
 Before the summer of 1993, Plaintiffs had never applied for unemployment benefits during the summer months while they were unemployed. Near the end of the 1992-93 school year, however, they became interested in collecting unemployment benefits during the summer months and--because concerned about jeopardizing their being rehired--asked their supervisor for advice. Their supervisor suggested that Plaintiffs speak with the Superintendent, which they did in June of 1993. The Superintendent indicated that he expected to recommend Plaintiffs for rehire, and while the Board normally followed his recommendations, he could not say for certain what the School Board would do. After their discussion with the Superintendent, Plaintiffs applied for, and received, unemployment benefits.
 
 
 7
 On August 16, 1993, the Board met to consider, among other things, which substitute bus drivers to rehire for the upcoming school year. Before the meeting, the Superintendent gave the Board a list of the substitute bus drivers whom he recommended for rehire, which included Plaintiffs. However, when it became known at the meeting that they had applied for and collected unemployment benefits during the summer of 1993, the Board became unhappy. Because it does not pay money into the State of Ohio's unemployment fund, the Board pays for any ex-employee's unemployment benefits dollar for dollar. As a result, the Board voted to rehire all of the individuals the Superintendent had recommended except for Plaintiffs. The reason for that decision, Defendants candidly admit, was that Plaintiffs had filed for and obtained unemployment benefits.
 
 
 8
 When Plaintiffs learned that they had not been rehired, they contacted the School Board for an explanation. The Board told them that they had not been hired because they had sought and obtained unemployment benefits, the receipt of which translated into loss of the Board's own revenue. Plaintiffs offered to repay to the School Board the benefits that they had received in exchange for being allowed to return to their jobs, but the Board declined.
 
 
 9
 Following their refusal to rehire Plaintiffs, Defendants changed their policies to ensure that all substitute employees had a reasonable assurance of employment for the following school year, which made those employees ineligible for unemployment compensation under Ohio law. Under Ohio law,
 
 
 10
 [b]enefits based on service for an educational institution ... in other than an instructional, research, or principal administrative capacity, shall not be paid to any individual for any week of unemployment which begins during the period between two successive academic years or terms of the employing educational institution ..., provided the individual performed such services for the educational institution ... during the first such academic year or term and, there is a reasonable assurance that such individual will perform such services for any educational institution ... in the second such academic years or terms.
 
 
 11
 Ohio Rev.Ann. § 4141.29(I)(1)(b) (Baldwin 1995); see Knight v. Administrator, Ohio Bureau of Employment Servs., 28 Ohio St.3d 8, 501 N.E.2d 1198, 1201 (1986). To bring their hiring practices within the parameters of the "reasonable assurance" language, the School Board subsequently informed substitute employees at the end of an academic term that they would be rehired for the following year.
 
 
 12
 On February 24, 1994, Plaintiffs filed this five-count suit in federal court against the School Board, individual members of the School Board, and its Superintendent. In counts one to four, they claim violations of their federal constitutional rights pursuant to 42 U.S.C. § 1983: (1) the right to petition for redress of grievances; (2) the right of access to administrative agencies; (3) the right to equal protection of the laws; and (4) the right to due process. In count five, Plaintiffs allege that Defendants violated the public policy of Ohio.
 
 
 13
 Defendants moved for summary judgment on all counts of the complaint. Plaintiffs cross-moved for partial summary judgment on the issue of liability. The district court granted Defendants' motion and denied Plaintiffs' motion. The court held that Plaintiffs failed "to articulate a clear constitutional right of which they have been deprived." (J.A. at 24.) It rejected their claims for violation of their rights to petition for redress of grievances and of access to administrative agencies on grounds that they
 
 
 14
 never sought access to any court or administrative agency to redress a wrong or an injustice, or to otherwise pursue a grievance. Rather, they only sought access to a state agency in order to obtain benefits due persons who meet certain objective criteria. Any retaliatory action taken by the School Board against the plaintiffs for having sought unemployment compensation benefits did not chill plaintiffs' ability to petition the government for redress of grievances.
 
 
 15
 (Id. at 24-25.)
 
 
 16
 The court rejected Plaintiffs' equal protection claim on grounds that to the extent the School Board treated substitute bus drivers who applied for and collected unemployment compensation differently from those persons outside that class, the different treatment was not unconstitutional. According to the court, the Board acted in a rational manner to protect the funds used to operate the school system. The court noted that "[i]t is not insignificant that the discrete class plaintiffs single out as having been unfairly treated is a class of persons who obtained unemployment compensation benefits to which they apparently were not entitled." (Id. at 25.)
 
 
 17
 Because it dismissed the federal claims over which it had original jurisdiction, the court declined to exercise supplemental jurisdiction over Plaintiffs' state law claim for violation of Ohio public policy. Plaintiffs' due process claim was rejected without discussion.
 
 
 18
 Valot, Hansen, and Roosa timely appealed.
 
 DISCUSSION
 
 19
 Plaintiffs' claims on appeal fall into essentially two categories. The first category includes various challenges to the district court's grant of summary judgment against Plaintiffs on their claims under § 1983. The second category includes a challenge to the court's decision not to exercise supplemental jurisdiction over, or grant summary judgment for Plaintiffs on, their state law claim sounding in public policy. In opposition, Defendants contend not only that the district court's decisions were proper on the merits, but also that the individual Defendants are entitled to qualified immunity.
 
 
 20
 * We first consider whether the district court erred in granting summary judgment against Plaintiffs on their claims under § 1983. Summary judgment is appropriate where there are no genuine issues of material fact in dispute and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); see Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); LaPointe v. United Autoworkers Local 600, 8 F.3d 376, 378 (6th Cir.1993). The district court's grant of summary judgment is reviewed de novo. City Management Corp. v. U.S. Chem. Co., 43 F.3d 244, 250 (6th Cir.1994). Its denial of summary judgment is reviewed for abuse of discretion. Pinney Dock & Transp. Co. v. Penn Cent. Corp., 838 F.2d 1445, 1472 (6th Cir.), cert. denied, 488 U.S. 880, 109 S.Ct. 196, 102 L.Ed.2d 166 (1988).
 
 
 21
 To make out a claim under § 1983, a plaintiff must establish that (1) the conduct complained of was committed by a person acting under color of state law, and (2) that conduct deprived a person of rights, privileges, or immunities secured by the constitution or laws of the United States. Parratt v. Taylor, 451 U.S. 527, 535, 101 S.Ct. 1908, 1912-13, 68 L.Ed.2d 420 (1981), rev'd on other grounds, Daniels v. Williams, 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986); Ellison v. Garbarino, 48 F.3d 192, 194 (6th Cir.1995). There is no dispute in this case that in terminating Plaintiffs, Defendants acted under color of state law. At issue is whether, as Plaintiffs contend, Defendants' conduct deprived them of any of their rights under the federal constitution.
 
 
 22
 * Plaintiffs first contend that the district court erred in entering summary judgment against them on their right-of-access claim, under which umbrella they include their petition-for-a-redress-of-grievances claim. Plaintiffs do not contend that they were precluded from applying for unemployment compensation or that they were denied unemployment benefits. Indeed, they both applied for and obtained such benefits. Rather, Plaintiffs maintain that Defendants declined to rehire them in retaliation for their seeking and obtaining unemployment compensation, which, they maintain, is protected by the constitutional right of access.
 
 
 23
 As the Supreme Court has explained, "[E]ven though a person has no 'right' to a valuable governmental benefit [such as public employment] and even though the government may deny him the benefit for any number of reasons, there are some reasons upon which the government may not rely. It may not deny a benefit to a person on a basis that infringes his constitutionally protected interests...." Perry v. Sindermann, 408 U.S. 593, 597, 92 S.Ct. 2694, 2697, 33 L.Ed.2d 570 (1972); see Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle, 429 U.S. 274, 283-84, 97 S.Ct. 568, 574-75, 50 L.Ed.2d 471 (1977); Crocker v. Tennessee Secondary Sch. Athletic Ass'n, 980 F.2d 382, 387 (6th Cir.1992); Howland v. Kilquist, 833 F.2d 639, 644 (7th Cir.1987); Littlejohn v. Rose, 768 F.2d 765, 769-70 (6th Cir.1985), cert. denied, 475 U.S. 1045, 106 S.Ct. 1260, 89 L.Ed.2d 570 (1986). More to the point here, a claim of retaliation for exercise of the constitutional right of access is cognizable under § 1983. Smith v. Arkansas State Highway Employees, Local 1315, 441 U.S. 463, 465, 99 S.Ct. 1826, 1828, 60 L.Ed.2d 360 (1979); In re Workers' Compensation Refund, 46 F.3d 813, 822 (8th Cir.1995); Franco v. Kelly, 854 F.2d 584, 589-90 (2d Cir.1988); Harrison v. Springdale Water & Sewer Comm'n, 780 F.2d 1422, 1427-28 (8th Cir.1986); see Warmus v. Hank, Nos. 93-1619/1620, 1995 WL 82061, * 10 (6th Cir. Feb.28, 1995) (unpublished disposition); Graham v. National Collegiate Athletic Ass'n, 804 F.2d 953, 959 (6th Cir.1986) (dicta).
 
 
 24
 According to Plaintiffs, the right of access that underlies their charge of retaliation is lodged not only in the Petition Clause of the First Amendment--to which the district court appears to have confined its analysis--but also in the Due Process Clause of the Fourteenth Amendment, and the Privileges and Immunities Clauses of Article IV and the Fourteenth Amendment.
 
 
 25
 It is, of course, true, as Defendants acknowledge, and as we recognized in John L. v. Adams, 969 F.2d 228, 231-32 (6th Cir.1992), that the right of access has been traced to various provisions of the constitution. See, e.g., Wolff v. McDonnell, 418 U.S. 539, 579, 94 S.Ct. 2963, 2986, 41 L.Ed.2d 935 (1974) (Due Process Clause); California Motor Transp. Co. v. Trucking Unlimited, 404 U.S. 508, 510, 92 S.Ct. 609, 611-12, 30 L.Ed.2d 642 (1972) (Petition Clause); Douglas v. California, 372 U.S. 353, 355, 358, 83 S.Ct. 814, 815-16, 9 L.Ed.2d 811 (1963) (Equal Protection Clause); Chambers v. Baltimore & Ohio R.R., 207 U.S. 142, 148, 28 S.Ct. 34, 35, 52 L.Ed. 143 (1907) (Privileges and Immunities Clause of Article IV).
 
 
 26
 That does not mean, however, that we must analyze Plaintiffs' right-of-access claim under each of these provisions. In our judgment, Plaintiffs' claim is best viewed as a claim under the Petition Clause, for that provision expressly protects conduct most like the conduct for which Plaintiffs seek protection from retaliation. See Harrison, 780 F.2d at 1427 n. 7 (finding it more appropriate to view the right of access to the courts as a first-amendment right to petition). Moreover, in our view, the Petition Clause accords their right-of-access claim all the breadth the Constitution affords. Thus, we limit our analysis to that clause.
 
 
 27
 A cause of action for violation of the Petition Clause is subject to the same analysis applied to a claim arising under the Speech Clause. White Plains Towing Corp. v. Patterson, 991 F.2d 1049, 1059 (2d Cir.), cert. denied, 510 U.S. 865, 114 S.Ct. 185, 126 L.Ed.2d 144 (1993); Schalk v. Gallemore, 906 F.2d 491, 498 (10th Cir.1990); Hoffmann v. Mayor, Councilmen & Citizens of Liberty, 905 F.2d 229, 233 (8th Cir.1990); Rathjen v. Litchfield, 878 F.2d 836, 842 (5th Cir.1989); Belk v. Town of Minocqua, 858 F.2d 1258, 1261-62 (7th Cir.1988); Gearhart v. Thorne, 768 F.2d 1072, 1073 (9th Cir.1985) (per curiam); Renfroe v. Kirkpatrick, 722 F.2d 714, 715 (11th Cir.) (per curiam), cert. denied, 469 U.S. 823, 105 S.Ct. 98, 83 L.Ed.2d 44 (1984); see Boyle v. Burke, 925 F.2d 497, 505-06 (1st Cir.1991) (implied in dicta). But see San Filippo v. Bongiovanni, 30 F.3d 424 (3d Cir.1994), cert. denied, 513 U.S. 1082, 115 S.Ct. 735, 130 L.Ed.2d 638 (1995).
 
 
 28
 Specifically, the right to petition is limited to matters of public concern. See, e.g., Hoffmann, 905 F.2d at 233; Rathjen, 878 F.2d at 841-42; Gearhart, 768 F.2d at 1073; Day v. South Park Indep. Sch. Dist., 768 F.2d 696, 703 (5th Cir.1985), cert. denied, 474 U.S. 1101, 106 S.Ct. 883, 88 L.Ed.2d 918 (1986); Altman v. Hurst, 734 F.2d 1240, 1244 n. 10 (7th Cir.) (per curiam), cert. denied, 469 U.S. 982, 105 S.Ct. 385, 83 L.Ed.2d 320 (1984); Renfroe, 722 F.2d at 715. But see San Filippo, 30 F.3d at 440-43.
 
 
 29
 As the Supreme Court explained in Connick v. Myers, 461 U.S. 138, 146, 103 S.Ct. 1684, 1689-90, 75 L.Ed.2d 708 (1983), a particular expression addresses a matter of public concern where it can "be fairly considered as relating to any matter of political, social, or other concern to the community...." The inquiry is made based on by "the content, form, and context of a given statement, as revealed by the whole record." Id. at 147-48, 103 S.Ct. at 1690. Speech does not generally touch on a matter of public concern, as that requirement has been interpreted, where its aim is to air or remedy grievances of a purely personal nature. See, e.g., Schalk, 906 F.2d at 495.
 
 
 30
 While the availability of unemployment compensation is a matter of public concern, Plaintiffs' request for such benefits during the summer months while they were unemployed is far more a matter of private interest than public concern. See, e.g., White Plains Towing, 991 F.2d at 1058 (indicating that demands and complaints to police seeking an increase in towing referrals do not touch a matter of public concern); Hoffmann, 905 F.2d at 233-34 (same as to grievance pursuant to city personnel rules complaining about dismissal); Rathjen, 878 F.2d at 842 (lawsuit protesting demotion); Day, 768 F.2d at 700 (grievance about performance evaluation); Altman, 734 F.2d at 1244 (encouragement of another officer to appeal her suspension and file suit for retaliation); Gearhart, 768 F.2d at 1073 (grievance refuting false charge of ineptitude); Renfroe, 722 F.2d at 715 (grievance asserting interest in keeping full-time job). Thus, Plaintiffs cannot make out a cause of action under the Petition Clause and their right-of-access claim must fail.
 
 
 31
 Even if we were to hold that the right to petition is not limited to matters of public concern, Plaintiffs' right-of-access claim would fail when balanced against Defendants' interests in not rehiring them for seeking unemployment benefits. It is familiar learning that in determining firstamendment rights in the context of public employment, we must undertake to balance "the interests of the [employee or potential employee], as a citizen, in commenting upon [the subject matter in question] and the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees." Pickering v. Board of Educ. of Township High Sch. Dist. 205, 391 U.S. 563, 568, 88 S.Ct. 1731, 1734-35, 20 L.Ed.2d 811 (1968); McMurphy v. City of Flushing, 802 F.2d 191, 197 (6th Cir.1986). "This balancing is necessary," as the Supreme Court explained in Rankin v. McPherson, 483 U.S. 378, 384, 107 S.Ct. 2891, 2896-97, 97 L.Ed.2d 315 (1987), "in order to accommodate the dual role of the public employer as a provider of public services and as a government entity operating under the constraints of the First Amendment."[1] See Board of County Comm'rs v. Umbehr, --- U.S. ----, ----, 116 S.Ct. 2342, 2347, 135 L.Ed.2d 843 (1996).
 
 
 32
 According to Defendants, their interest in not rehiring Plaintiffs was two-fold: (1) to conserve school district funds--out of which they were required to pay for Plaintiffs' unemployment benefits dollar for dollar--by not employing those substitute bus drivers who would file for unemployment benefits, and (2) to send a message that they would not permit employees to abuse the system. In seeking unemployment compensation, of course, Plaintiffs' interest was none other than to obtain benefits made available under Ohio law as compensation for loss of remuneration due to involuntary total or partial unemployment. Thus, on the one side of scale are Defendants' interests in protecting the Board's fisc and sending a message against abuse of the system, and on the other side of the scale is Defendants' interest in seeking and obtaining unemployment benefits during the summer months, when they were under contract with the Board.
 
 
 33
 In our view, Defendants' interest in promoting the efficiency of the public service that the Board performs outweighs Plaintiffs' interests in petitioning for unemployment benefits. Defendants' interest in protecting the public fisc is not only legitimate, but also laudable. Protecting the public fisc ranks high among the aims of any legitimate government. Although Plaintiffs offered to pay back the benefits they received, the gesture came only after Defendants declined to rehire them. Thus, Plaintiffs' offer bears (if at all) only slightly on the Board's prior decision not to rehire them; it does not render the Defendants' decision arbitrary or irrational.
 
 
 34
 Even if rehiring Plaintiffs would not have imposed short term costs on the Board, it might nevertheless have triggered long term costs, such as its having to pay substitute drivers, including plaintiffs, unemployment benefits for future periods of summertime unemployment. Put another way, while not rehiring Plaintiffs might not have resulted in short term gain to the Board--and may have even resulted in short term loss--it might have resulted in a long term loss to the Board. In not rehiring Plaintiffs, Defendants acted to avoid the risk of such loss. Inasmuch as that risk was reasonably foreseeable, we cannot say that Defendants' efforts to escape it were irrational.
 
 
 35
 Accordingly, even if we were to recognize the right to petition as applicable to matters of private concern, which we decline to do, Plaintiffs' claim for violation of their right to seek unemployment benefits fails as against Defendants' more weighty interest in interfering with that interest.
 
 B
 
 36
 Plaintiffs next argue that the Board's "refusal to rehire Plaintiffs because they did not forfeit their statutory rights [to unemployment compensation] is plainly violative of due process." Punishing them for seeking and obtaining that to which they are entitled under state law is, Plaintiffs say, "precisely the form of arbitrary governmental conduct the due process clause was intended to prevent." Amicus curiae Ohio Education Association echoes Plaintiffs' position.
 
 
 37
 In opposition, Defendants argue that Plaintiffs' due process claim cannot be procedural because they "had no property right taken from them," they had a hearing before the School Board, and they stipulated at trial that their claim was for substantive due process. Plaintiffs conceded as much at oral argument, indicating that the only due process claim they advance is substantive in kind, and we limit our due process inquiry to that framework.
 
 
 38
 Substantive due process "serves as a vehicle to limit various aspects of potentially oppressive government action." Howard v. Grinage, 82 F.3d 1343, 1349 (6th Cir.1996); see Daniels v. Williams, 474 U.S. 327, 331, 106 S.Ct. 662, 664-65, 88 L.Ed.2d 662 (1986). Substantive due process claims may be loosely divided into two categories: (1) deprivations of a particular constitutional guarantee; and (2) actions that "shock the conscience." Pusey v. City of Youngstown, 11 F.3d 652, 656 (6th Cir.1993), cert. denied, 512 U.S. 1237, 114 S.Ct. 2742, 129 L.Ed.2d 862 (1994); Mansfield Apartment Owners Ass'n v. City of Mansfield, 988 F.2d 1469, 1474 (6th Cir.1993). Where government action does not deprive a plaintiff of a particular constitutional guarantee or shock the conscience, that action survives the scythe of substantive due process so long as it is rationally related to a legitimate state interest. See, e.g., Reno v. Flores, 507 U.S. 292, 301-05, 113 S.Ct. 1439, 1446-49, 123 L.Ed.2d 1 (1993); Blue Diamond Coal Co. v. Shalala, 79 F.3d 516, 521 (6th Cir.1996); Galas v. McKee, 801 F.2d 200, 205 (6th Cir.1986).
 
 
 39
 Because Defendants' decision not to rehire Plaintiffs did not deprive them of a particular constitutional guarantee and does not shock the conscience, Defendants' action is subject to rationality review. Under that standard, Plaintiffs bear the burden to show that Defendants' decision was not rationally related to a legitimate state interest. See, e.g., Blue Diamond Coal, 79 F.3d at 521; Kentucky Div., Horsemen's Benevolent & Protective Ass'n v. Turfway Park Racing Ass'n, 20 F.3d 1406, 1414-15 (6th Cir.1994). In our judgment, Plaintiffs have failed to meet that burden.
 
 
 40
 Among Defendants' asserted interests is protection of the public fisc. As noted above, that interest is not only legitimate, but also laudable. Plaintiffs have not, in our view, met their burden to show that Defendants' decision not to rehire them was not rationally related to that interest. Again, that they offered to pay back the unemployment benefits they obtained is not enough to undermine the import of Defendants' interest. In refusing to rehire substitute bus drivers for whom it was required to pay unemployment benefits, the Board acted rationally to protect against the depletion of its fisc. Thus, Plaintiffs' due process claim must fail.
 
 C
 
 41
 Finally, Plaintiffs argue that the Board terminated them in violation of the Equal Protection Clause. They contend that the district court should have examined Defendants' actions under strict-scrutiny analysis instead of rational-relationship analysis because Defendants infringed on their fundamental constitutional rights. They contend that the Board's decision fails strict scrutiny because it was not narrowly tailored to a compelling state interest; it was the most intrusive means to achieve the Board's goal. Alternatively, Plaintiffs say, the Board's refusal to rehire them fails constitutional muster under rationality review. The Board's actions bear no rational relationship to the asserted interest of protecting public funds, the argument runs, leaving the bare desire to harm an unpopular group, which, of course, is not a legitimate state interest.
 
 
 42
 Defendants disagree that strict scrutiny applies, reasoning that no fundamental right is at issue. They characterize their actions as creating a class of "those former employees who filed for unemployment benefits between school terms despite their anticipation of being rehired," which classification, Defendants say, was reasonably drawn to discourage future similar incidents by other employees. Furthermore, Defendants claim that "[e]qual protection was meant to apply to statutory or administrative schemes, not ad hoc decisions of a school hiring authority."
 
 
 43
 Despite Defendants' claim, it is axiomatic that the Equal Protection Clause applies to more than statutory schemes. See, e.g., J.E.B. v. Alabama, 511 U.S. 127, 114 S.Ct. 1419, 128 L.Ed.2d 89 (1994) (applying equal protection analysis to use of peremptory challenges); Silver v. Franklin Township, Bd. of Zoning Appeals, 966 F.2d 1031, 1036 (6th Cir.1992) (same as to single decision of zoning board); Webb v. City of Chester, 813 F.2d 824 (7th Cir.1987) (same regarding one-time action of firing police officer because of gender). The question here is not whether the Equal Protection Clause applies, but rather how it applies.
 
 
 44
 The general rule in equal protection analysis is that state action is presumed to be valid and will be sustained if the classification drawn by the state is rationally related to a legitimate state interest. See Schweiker v. Wilson, 450 U.S. 221, 101 S.Ct. 1074, 67 L.Ed.2d 186 (1981). That rule gives way, however, where a state classifies by race, alienage, or national origin, or where a state impinges on personal rights protected by the Constitution; such action is subjected to strict scrutiny and will be sustained only if suitably tailored to serve a compelling state interest. See McLaughlin v. Florida, 379 U.S. 184, 85 S.Ct. 283, 13 L.Ed.2d 222 (1964). Classifications based on gender and legitimacy call for review under an intermediate standard and will fail unless substantially related to a sufficiently important government interest. See Mississippi Univ. for Women v. Hogan, 458 U.S. 718, 102 S.Ct. 3331, 73 L.Ed.2d 1090 (1982) (gender); Mathews v. Lucas, 427 U.S. 495, 96 S.Ct. 2755, 49 L.Ed.2d 651 (1976) (illegitimacy).
 
 
 45
 Inasmuch as Defendants' action in this case did not classify Plaintiffs on suspect or quasi-suspect grounds or impinge on a personal right protected by the Constitution, we review that decision for rationality. Romer v. Evans, --- U.S. ----, ----, 116 S.Ct. 1620, 1627, 134 L.Ed.2d 855 (1996). For the same reason that Defendants' decision survives rationality review for due process purposes, it passes muster here. Plaintiffs have failed to show that Defendants' decision was not rationally related to a legitimate state interest. Thus, Plaintiffs' equal protection claim must fail.
 
 II
 
 46
 Next, and finally, we consider whether the district court erred in declining to exercise supplemental jurisdiction over Plaintiffs' state law claim. According to Plaintiffs, the court erred in dismissing their state claim for violation of public policy, because their federal claims were properly before it. Moreover, Plaintiffs urge, this Court should enter judgment for them as a matter of law on the claim, as to which they say there is no genuine issue of material fact and they are entitled to judgment as a matter of law. Defendants answer that the district court properly declined to exercise supplemental jurisdictional over Plaintiffs' state law claim as it properly dismissed their federal claims. They further argue that Plaintiffs failed to state a claim for a public policy tort under Ohio law.
 
 
 47
 A district court may decline to exercise supplemental jurisdiction over a state law claim where it has dismissed all of the federal claims over which it had original jurisdiction. 28 U.S.C. § 1367(c)(3); see Taylor v. First of America Bank-Wayne, 973 F.2d 1284, 1287 (6th Cir.1992). Its decision not to exercise supplemental jurisdiction in such circumstances is reviewed for abuse of discretion. Landefeld v. Marion Gen. Hosp., Inc., 994 F.2d 1178, 1182 (6th Cir.1993). Also, as noted above, the court's denial of summary judgment is reviewed for abuse of discretion. Pinney Dock & Transp. Co. v. Penn Cent. Corp., 838 F.2d 1445, 1472 (6th Cir.), cert. denied, 488 U.S. 880, 109 S.Ct. 196, 102 L.Ed.2d 166 (1988).
 
 
 48
 As set out above, the district court did not err in dismissing Plaintiffs' federal claims. Thus, it did not err in declining to exercise supplemental jurisdiction over their state law claim on the basis of that dismissal. Accordingly, the court's decision refusing to exercise supplemental jurisdiction is affirmed. Because we hold that the court did not err in denying supplemental jurisdiction, we need not consider whether it erred in not granting summary judgment for Plaintiffs on their public policy claim.[2]
 
 CONCLUSION
 
 49
 This is not a dispute which has an easy resolution either in terms of constitutional law or for that matter in terms of ordinary fairness. If the Board was in error in believing it should not have to be responsible for payment of unemployment benefits to a person whom it had engaged even in successive years for a period of nine months each year, this was a misconception which appears even to have been shared by the trial court here. In other words, the dispute was not easily resolvable. It is difficult for us indeed to conclude that a board under such circumstances should be precluded from believing that its responsibility to the public fisc was constitutionally forbidden, under pain of being subject to damages if that position should ultimately be in error. Even in hindsight it is not easy to understand the logic of the Ohio statute, which precludes such employees from seeking unemployment compensation where there is an expectation of rehire, and yet requires it where there is no such guarantee. However, it is a matter of the public policy of Ohio not of the United States Constitution. Plainly the Ohio legislature had the right to legislate either to extend or to abolish unemployment benefits altogether should, in its wisdom, it decide to do so. The Board was obviously confused as to the extent of its powers and in that circumstance it simply acted in what it conceived to be an economical and sensible way. On a balancing test, therefore, especially given the fact that going into the controversy there was no guarantee of employment and given the further fact that the plaintiffs in fact received the unemployment compensation which their petitions for redress produced, application of a balancing test must perforce favor the Board. Plaintiffs had the burden of proof and on this basis the trial court properly concluded that they failed. For us to hold to the contrary in such circumstances would be in effect to confer upon the plaintiffs a property right which they knew from the outset was not theirs and would place the federal courts just one step further into the unwanted role of close regulation in what is essentially a matter of state law and discretion.
 
 
 50
 AFFIRMED.
 
 
 51
 RYAN, Circuit Judge, concurring.
 
 
 52
 While I come out at the same place my brother Engel does, in concluding that the plaintiffs have not made out their case, I get there following a very different analytical route. I am respectful of my brother's view that there is authority for the idea that the plaintiffs' First Amendment claim may be analyzed under a sort of confluence of petition clause and speech clause principles, involving the "matters of public concern" test. But I think, respectfully, that such an analysis misapprehends the intended meaning of those constitutional guaranties and the proper application of 42 U.S.C. § 1983.
 
 I.
 
 53
 The plaintiffs claim that their statutory right to claim unemployment benefits under Ohio law translates into a fundamental right of access to the courts "and to petition the Government for a redress of grievances" as assured by the First Amendment of the United States Constitution. U.S. CONST. amend. I. Having asserted that they have a fundamental right to seek unemployment benefits, the plaintiffs contend that the School Board's refusal to rehire them, in retaliation for the exercise of their constitutional right to seek unemployment benefits, states a cognizable section 1983 cause of action. In my judgment, they are mistaken.
 
 Section 1983 provides, in pertinent part:
 
 54
 Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State ... subjects, or causes to be subjected, any citizen of the United States ... to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress....
 
 
 55
 42 U.S.C. § 1983.
 
 
 56
 As an aside, I note with interest that the plaintiffs have neither pleaded, nor attempted to prove, the existence of a "policy or custom" in the school district to deny the plaintiffs' constitutional rights, a showing that is required by Monell v. Department of Social Services, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), to establish "municipal liability." The parties do not seem to think that is a very important point, nor did the district court, so I shall pass it.
 
 
 57
 As to the plaintiffs' alleged claim of retaliatory discharge for exercising their constitutional right to petition the government, a proper analysis begins with a look at the elements of all claims brought under section 1983. In order to state such a claim, the plaintiffs must establish two things:
 
 
 58
 1. that defendants deprived them of a federal statutory or constitutional right; and
 
 
 59
 2. that defendants acted under color of state law.
 
 
 60
 Searcy v. City of Dayton, 38 F.3d 282, 286 (6th Cir.1994). As the Supreme Court said in Albright v. Oliver, 510 U.S. 266, 114 S.Ct. 807, 127 L.Ed.2d 114 (1994), the "first step in any such claim is to identify the specific constitutional right allegedly infringed." Id. at 271, 114 S.Ct. at 811 (emphasis added). In my judgment, the plaintiffs have failed entirely to meet this crucial predicate requirement.
 
 
 61
 Plaintiffs' theory appears to be that the right to file for unemployment compensation is included in or protected by the First Amendment's right to petition for redress of grievances, which, in turn, incorporates the right of access to the courts. I think that argument is circular and meritless. Plaintiffs assume their own conclusion and simply assert repeatedly that their "constitutional right" was violated when the School Board retaliated against them. With the exception of the Third Circuit's dicta in Bradley v. Pittsburgh Board of Education, 913 F.2d 1064 (3d Cir.1990), I have found no cases that support such an expansive reading of the right to petition. Most cases discussing the right of access or the right to petition begin the analysis by identifying the specific constitutional right that is the subject of the petition, or whose vindication is sought via access to an adjudicator.
 
 
 62
 Here, the plaintiffs do not identify any such predicate constitutional right. Certainly there is no constitutional right to receive unemployment compensation, and one cannot be created by bootstrapping the state law right to unemployment compensation to the First Amendment's right to petition. It is clear that the state does not have to provide unemployment compensation. See Richardson v. Belcher, 404 U.S. 78, 81, 92 S.Ct. 254, 257, 30 L.Ed.2d 231 (1971). And even if it chooses to provide the benefit, it can choose to "make substantive changes in the law of entitlement to public benefits" without offending the Constitution. Id. It is also clear that whatever property interests plaintiffs may have in obtaining unemployment compensation, the state may freely repeal any legislation that confers that right, and with the repeal, any property interest is extinguished. Story v. Green, 978 F.2d 60, 63 (2d Cir.1992). That being so, there cannot be any constitutionally protected First Amendment right to petition for such benefits. If there were such a constitutional right, nothing short of a constitutional amendment would suffice to repeal the state's unemployment benefits scheme. I find plaintiffs' arguments strained and wholly unpersuasive. In my judgment, applying for unemployment compensation is simply not a "petition ... for a redress of grievances" under the First Amendment.
 
 
 63
 Amici's argument is likewise circular. They begin their analysis by stating that the right to petition the Government for a redress of grievances is clearly protected under the First Amendment; this, of course, is a given. They then proceed to describe at length and in considerable detail the complex structure and procedures comprising the Ohio unemployment compensation scheme. They conclude that because the scheme is in part adversarial, it is protected under the First Amendment's right to petition. Not surprisingly, amici cite no support for such a facile creation of a fundamental right. This argument, like the plaintiffs', is simply an effort to bootstrap a state right to a fundamental First Amendment right--an effort supported by absolutely no authority.
 
 
 64
 I conclude that plaintiffs and their amici have failed to identify any constitutional right to serve as a necessary predicate for a section 1983 claim for retaliatory refusal to rehire them as substitute bus drivers.
 
 II.
 
 65
 Plaintiffs also claim that they have suffered a substantive due process violation because they have a fundamental right not to be retaliated against for having sought and obtained unemployment compensation benefits. However, nowhere do the plaintiffs identify a specific substantive right of which they have been deprived. Instead, they simply assert that the School Board violated their "due process" rights because its conduct was arbitrary, discriminatory, and capricious.
 
 
 66
 The discussion in the plaintiffs' brief of the "due process" violation they claim to have suffered reveals a complete failure to grasp the distinctions between substantive due process and procedural due process. They cannot be judged too harshly for this shortcoming, given the mess that has been made of this jurisprudence by a number of federal courts, including the Supreme Court. That is the price, I suppose, of attempting to build a jurisprudence on the foundation of a constitutional oxymoron: substantive due process.
 
 
 67
 Plaintiffs recognize that if they do have a due process claim, it is rooted in the Fourteenth Amendment which states in relevant part, that no state shall "deprive any person of life, liberty, or property, without due process of law...." U.S. CONST. amend. XIV, § 1. "It follows, then, that if state actors ... do not infringe on the life, liberty, or property of the plaintiffs, there can be no due process violation." Whaley v. County of Tuscola, 58 F.3d 1111, 1113 (6th Cir.) (emphasis added), cert. denied, --- U.S. ----, 116 S.Ct. 476, 133 L.Ed.2d 404 (1995). Plaintiffs do not allege that the interest of which they have been deprived is found either in the "life," or the "liberty," or the "property" components of the Fourteenth Amendment. Rather, they seem to ground what they repeatedly refer to as their "constitutional right," in the First Amendment, which, of course, is not protected by the Due Process Clause, but rather by the First Amendment itself. See Graham v. Connor, 490 U.S. 386, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989). Where a particular amendment "provides an explicit textual source of constitutional protection" against a particular sort of government behavior, "that Amendment, not the more generalized notion of 'substantive due process,' must be the guide for analyzing these claims." Id. at 395, 109 S.Ct. at 1871.
 
 
 68
 Substantive due process protections "have for the most part been accorded to matters relating to marriage, family, procreation, and the right to bodily integrity." Albright, 510 U.S. at 272, 114 S.Ct. at 812. The right to receive unemployment compensation is not a "fundamental" right at all, to say nothing of being of the type traditionally protected by the substantive component of the Due Process Clause. Moreover, the plaintiffs received the unemployment benefits they sought.
 
 
 69
 Plaintiffs claim they were denied due process because the School Board acted arbitrarily. However, merely to state that the Due Process Clause was "intended to secure the individual from the arbitrary exercise of the powers of government," which may be freely conceded, does nothing to state a claim under the substantive component of the Due Process Clause. Id. (internal quotation marks and citations omitted). "The substantive Due Process Clause is not concerned with the garden variety issues of common law.... Its concerns are far narrower.... [It] affords only those protections so rooted in the traditions and conscience of our people as to be ranked as fundamental." Charles v. Baesler, 910 F.2d 1349, 1353 (6th Cir.1990) (internal quotation marks and citations omitted).
 
 
 70
 State-created rights "do not rise to the level of 'fundamental' interests protected by substantive due process." Id. This is so because "fundamental" rights "are created only by the Constitution." Regents of the Univ. of Michigan v. Ewing, 474 U.S. 214, 229, 106 S.Ct. 507, 515, 88 L.Ed.2d 523 (1985) (Powell, J., concurring). Clearly, state-created employment benefits, such as unemployment compensation or the right to a government pension, are not "fundamental" rights created by the Constitution, and therefore they do not enjoy substantive due process protection. See McKinney v. Pate, 20 F.3d 1550, 1560 (11th Cir.1994).
 
 
 71
 Moreover, it is the procedural component of the Due Process Clause, rather than the substantive component, which provides protection from arbitrary government actions. See Howard v. Grinage, 82 F.3d 1343, 1349-50 (6th Cir.1996). Substantive due process refers to government actions that cannot be undertaken regardless of the procedures used. Id.; see also Daniels v. Williams, 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986).
 
 
 72
 Since the plaintiffs cannot claim that the right to unemployment compensation is fundamental, their claim has to be that some arbitrary conduct in this case deprived them of "procedural" due process. But the nonarbitrary "process" guaranteed by the Due Process Clause is process suitable to vindicate the denial of an identifiable life, liberty, or property interest. Here, plaintiffs have asserted none. It is well-settled that no procedural duties are implicated when plaintiffs fail to allege an underlying constitutionally protected right. See Gagliardi v. Village of Pawling, 18 F.3d 188, 193 (2d Cir.1994). "The deprivation of a procedural right to be heard ... is not actionable when there is no protected right at stake." Id.
 
 
 73
 The reality is that the plaintiffs were not deprived of unemployment compensation, which is the only arguable protected property interest they have. Rather, they were deprived of being rehired to do their former jobs in which they have no protected property interest. See Ramsey v. Board of Educ. of Whitley County, Kentucky, 844 F.2d 1268, 1274 (6th Cir.1988). It is well-settled that when the state deprives an individual of a recognized property interest, it must provide the individual a meaningful opportunity to be heard prior to the deprivation, or in some cases after. See Logan v. Zimmerman Brush Co., 455 U.S. 422, 429, 102 S.Ct. 1148, 1154, 71 L.Ed.2d 265 (1982). But this is not so where the government has deprived the individual of a benefit or property interest that is not protected by the Constitution.
 
 
 74
 In sum, the plaintiffs have failed to bring their claim within the Due Process Clause, procedural or substantive, because they have not alleged a protected life, liberty, or property interest. Moreover, whatever right they may have under state law, it is clearly not some undefined "fundamental" right that is protected by the Fourteenth Amendment. Plaintiffs have adequate state remedies to seek redress for the wrong they claim to have suffered.
 
 III.
 
 75
 I agree entirely that the plaintiffs have suffered no denial of equal protection of the laws and that the district court did not err in deciding not to entertain plaintiffs' state law claim.
 
 IV.
 
 76
 I join in the judgment of affirmance.
 
 
 77
 MERRITT, Circuit Judge, concurring in part and dissenting in part.
 
 
 78
 The opinions of my colleagues create a direct conflict with the Third Circuit in San Filippo v. Bongiovanni, 30 F.3d 424 (3rd Cir.1995), and misinterpret the elements of a cause of action for the violation of the right of petition clause.
 
 
 79
 I disagree only with Section I.A. of Judge Engel's opinion which imports into right of petition cases the "public concern" test used in public employee, free speech cases. The right "to petition Government for a redress of grievances" is the last in the list of rights granted in the First Amendment; it was a concept separate from free speech in the minds of the authors of the Bill of Rights.
 
 
 80
 Plaintiffs have made out a violation of the right of petition clause of the First Amendment. I would follow Judge Louis Pollack's sensible analysis of the right of petition in San Filippo v. Bongiovanni, 30 F.3d 424, 442-43 (3rd Cir.1994), the crux of which is well-stated at page 442:
 
 
 81
 But when government--federal or state--formally adopts a mechanism for redress of those grievances for which government is allegedly accountable, it would seem to undermine the Constitution's vital purposes to hold that one who in good faith files an arguable meritorious 'petition' invoking that mechanism may be disciplined for such invocation by the very government that in compliance with the petition clause has given the particular mechanism its constitutional imprimatur.
 
 
 82
 The basis of my dissent on this point is that this is not a free speech case, and neither was the unemployment compensation case giving rise to the retaliatory discharge. Petitioning a court for redress should not be treated as an exercise in speech. Filing an unemployment compensation action, like hiring a lawyer, eating dinner before making a speech or driving a car or catching a plane to a meeting, is related to speech only marginally. It makes little sense to burden right of petition cases automatically with doctrines from the Speech Clause or the Establishment Clause or the Free Exercise Clause of the First Amendment.
 
 
 83
 Our case is a "pure petition" case in which the plaintiffs have successfully invoked a statutory right given by the state to public employees. I would follow the reasoning of San Filippo. See Shea, San Filippo v. Bongiovanni: The Public Concern Criteria and the Scope of the Modern Petition Right, 48 Vand. L.Rev. 1697 (1995). The petition clause should not be interpreted to permit retaliation for filing a legitimate unemployment compensation case anymore than it permits retaliation against individuals making legitimate claims for racial, gender or religious discrimination. We do not import the "public concern" test into due process, equal protection or other constitutional claims. Why do so here? I would therefore reverse the grant of summary judgment to defendants on the First Amendment right of petition theory and require that the case be tried on the merits.
 
 
 84
 I do not understand my brother Ryan's point. He is certainly right that unemployment compensation is not a federal constitutional right, but no one argues that it is. He is certainly wrong if he is saying a state may punish a citizen for successfully petitioning a governmental agency to gain a benefit (here unemployment compensation) to which he is entitled. The right of petition clause prevents the state from jailing or otherwise punishing vindictively a citizen for applying for welfare benefits or other social services to which he is entitled. The constitutional wrong here is the act of retribution (i.e. discharging the plaintiffs) for successfully seeking benefits. Such an act makes ineffective a citizen's right to seek government aid by requesting legitimate official or administrative relief and undermines the right "to petition for a redress of grievances."
 
 
 
 *
 Judge Merritt adheres to his original dissent but does not request rehearing en banc
 
 
 [1]
 Relevant considerations include, but are not limited to, "the manner, time, and place of the employee's expression" and "the context in which the dispute arose." Rankin, 483 U.S. at 388, 107 S.Ct. at 2899. Also pertinent is "whether the [petitioning] impairs discipline by superiors or harmony among co-workers, has a detrimental impact on close working relationships for which personal loyalty and confidence are necessary, or impedes the performance of the [petitioner's] duties or interferes with the regular operation of the enterprise." Id. "Interference with work, personnel relationships, or the speaker's job performance can detract from the public employer's function; avoiding such interference can be a strong state interest." Id. "Pickering requires full consideration of the government's interest in the effective and efficient fulfillment of its responsibilities to the public." Connick, 461 U.S. at 150, 103 S.Ct. at 1692
 
 
 [2]
 Because we affirm the district court's decision, we need not consider whether the individual Defendants are entitled to qualified immunity