NOT RECOMMENDED FOR PUBLICATION
File Name: 24a0201n.06

No. 23-5981

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

MARY ELIZABETH SEXTON,

    Plaintiff -Appellant,

v.

COMMISSIONER OF SOCIAL SECURITY,

    Defendant-Appellee.

)
)
)
)
)
)
)
)
)
)

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF KENTUCKY

OPINION

Before: BUSH, NALBANDIAN, and MURPHY, Circuit Judges.

JOHN K. BUSH, Circuit Judge.    Plaintiff Mary Elizabeth Sexton seeks to enjoin the Commissioner of the Social Security Administration (SSA) from ceasing her disability benefits while awaiting resolution of her appeal of an unfavorable determination from the SSA. The district court denied Sexton's motion, determining that she was not likely to succeed on the merits of her claim. For reasons that follow, we affirm.

**I.**

This case arose after several individuals orchestrated a fraudulent scheme to defraud the government of over 550 million dollars. *See Hicks v. Comm'r of Soc. Sec.*, 909 F.3d 786, 793 (6th Cir. 2018); *Kirk v. Comm'r of Soc. Sec. Admin.*, 987 F.3d 314, 318 (4th Cir. 2021). The group included Eric Conn, a Kentucky attorney who represented disabled clients seeking social security benefits; Frederic Huffnagle, a physician who signed off on medical evaluations proving

that Conn's clients were disabled; and David Daugherty, an administrative law judge (ALJ) who provided Conn's clients with favorable determinations. *Hicks*, 909 F.3d at 792–93.

Mary Sexton was one of Conn's former clients. Sexton applied for social security benefits with Conn's representation in March 2006, alleging that she was disabled beginning November 24, 2005. Daugherty issued a decision in her favor in April 2007, relying exclusively on a report from Dr. Huffnagle to find that she was disabled.

The SSA first learned about Conn's fraudulent scheme in 2006, when two of its employees reported that they suspected fraudulent activity was occurring in the Huntington, West Virginia SSA office. *Hicks*, 909 F.3d at 793. In 2011, the Office of the Inspector General (OIG) initiated an investigation, which ultimately revealed that Conn had submitted over 1,700 applications for benefits with fraudulent supporting documentation. As a result, in 2015, the SSA began to redetermine eligibility for beneficiaries whose applications were suspected to contain fraudulent information. The Appeals Council notified Sexton that her file had been flagged for a redetermination hearing because the OIG suspected that Huffnagle's report was fraudulent. After excluding Dr. Huffnagle's medical report, an ALJ decided in 2016 that insufficient evidence supported Sexton's claim that she was disabled under the Social Security Act (the Act) at the time she was awarded benefits.

After the Appeals Council denied her request for review, Sexton filed suit in 2016 challenging the ALJ's determination. In 2018, we decided in *Hicks* that the SSA violated the Due Process Clause of the Fifth Amendment when, during redetermination hearings, the government refused to allow claimants to rebut allegations that the medical reports included in their applications were fraudulent. 909 F.3d at 804. In 2019, the district court remanded Sexton's case

to the SSA for further proceedings, consistent with *Hicks*. The court also directed the SSA to reinstate Sexton's benefits.

In 2020, the Appeals Council notified Sexton that her case was remanded to an ALJ for another redetermination hearing. The SSA suspended in-person hearings following the onset of the COVID-19 pandemic. The SSA informed Sexton on three separate occasions that she could hold her redetermination hearing by phone or videoconference, but she declined, and thus stalled the proceedings. In November 2021, she sought to permanently enjoin the Commissioner from initiating redetermination proceedings, but her complaint was dismissed for failure to exhaust administrative remedies because she did not obtain a final agency decision before suing. *Sexton v. Comm'r of Soc. Sec.*, No. 6:21-CV-187, 2022 WL 1751003, at *1, 6 (E.D. Ky. May 31, 2022).

Sexton's second redetermination hearing was held in 2022. An OIG witness testified at the hearing about the impact of Conn's fraudulent scheme on Sexton's 2006 application, and he was cross-examined by Sexton's attorney. Sexton and her mother also testified about her condition from 2005 through her initial award of benefits in 2007. After considering the testimony from the hearing, the medical evidence in the record, and Sexton's objections, the ALJ determined that Sexton was not disabled during the relevant time period and ceased her benefits.[1] The ALJ did not consider Dr. Huffnagle's report, finding that there was "reason to believe" that the report was fraudulent "[g]iven the similarities between Mr. Conn's admitted fraud scheme and the facts of this case." Admin. Tr., R. 14-1, PageID 2276.

Sexton filed this action in January 2023, challenging the ALJ's disability determination and seeking to enjoin the SSA from stopping her benefits during the appeal process. She also

---

[1] Sexton filed additional applications for disability benefits in 2015, 2016, 2017, and 2019, all of which were denied.

requested an evidentiary hearing so that she could present evidence regarding the merits, and to demonstrate the irreparable harm she would suffer if her benefits ceased immediately. The district court denied her request for a hearing because the parties did not dispute any of the facts in her underlying action. The court also denied Sexton's motion for a preliminary injunction, holding that she had not demonstrated that she was likely to succeed on the merits, or that she would suffer irreparable harm without benefits during her appeal of the ALJ's decision. Sexton timely appealed the denial of her request for injunctive relief.

**II.**

We review a district court's ultimate decision about whether to issue a preliminary injunction for an abuse of discretion. *Daunt v. Benson*, 956 F.3d 396, 406 (6th Cir. 2020). In granting injunctive relief, a district court abuses its discretion when it "improperly applie[s] the governing law, use[s] an erroneous legal standard, or relie[s] upon clearly erroneous findings of fact." *City of Pontiac Retired Emps. Ass'n v. Schimmel*, 751 F.3d 427, 430 (6th Cir. 2014) (en banc) (per curiam).

District courts consider four factors when determining whether to grant a preliminary injunction: "(1) whether the movant has a strong likelihood of success on the merits; (2) whether the movant would suffer irreparable injury absent the injunction; (3) whether the injunction would cause substantial harm to others; and (4) whether the public interest would be served by the issuance of an injunction." *Bays v. City of Fairborn*, 668 F.3d 814, 818–19 (6th Cir. 2012). "Although no one factor is controlling, a finding that there is simply no likelihood of success on the merits is usually fatal." *O'Toole v. O'Connor*, 802 F.3d 783, 788 (6th Cir. 2015) (quoting *Gonzales v. Nat'l Bd. of Med. Exam'rs*, 225 F.3d 620, 625 (6th Cir. 2000)). "[T]he party seeking a preliminary injunction bears the burden of justifying such relief." *ACLU Fund of Mich.*

*v. Livingston Cnty.*, 796 F.3d 636, 642 (6th Cir. 2015) (quoting *McNeilly v. Land*, 684 F.3d 611, 615 (6th Cir. 2012)). We grant the "extraordinary remedy" of a preliminary injunction only when the party seeking injunctive relief "clear[ly] show[s]" that she is entitled to it. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22, 24 (2008).

### 1. Likelihood of Success on the Merits

We first consider whether Sexton is likely to succeed on the merits of her underlying claim. Sexton argues that the SSA violated its duty under the Act by failing to "immediately redetermine" her benefits. 42 U.S.C. § 405(u)(1)(A). She also claims that the SSA denied her adequate procedural protections during her redetermination hearing, violating her right to procedural due process under the Fifth Amendment. We address each claim in turn.

#### a. Statutory Claim

Sexton challenges the timeliness of her 2022 redetermination hearing, arguing that the SSA's failure to "immediately" redetermine her benefits violated the Act. The Act requires that the SSA "immediately redetermine the entitlement of individuals to monthly insurance benefits . . . if there is reason to believe that fraud or similar fault was involved in the application of the individual for such benefits." 42 U.S.C. § 405(u)(1)(A).

Sexton argues that although the SSA was aware of allegations of fraud as early as 2006, it failed to conduct redetermination hearings "immediately," in violation of the Act. But we have considered and rejected this very argument, as the district court correctly concluded. In *Hicks*, we held that even if the SSA failed to comply with the Act's timing provision when it initiated redetermination efforts nine years after first learning about Conn's scheme, there was no statutory violation because the Act does not provide a remedy for noncompliance. 909 F.3d at 811–12 ("[I]f a statute does not specify a consequence for noncompliance with statutory timing provisions, the

federal courts will not in the ordinary course impose their own coercive sanction.") (quoting *United States v. James Daniel Good Real Prop.*, 510 U.S. 43, 63 (1993)). We explained that it "seems counterintuitive to hold that a failure to reverse fraudulent determinations quickly enough precludes the government from reversing those determinations at all." *Id.* at 813. Rather than prevent redetermination hearings wholesale, we explained that the government could "implement greater procedural protections" to minimize prejudice from the SSA's delay. *Id.*

*Hicks* controls our analysis here. Even if the SSA failed to "immediately" hold Sexton's redetermination hearing after learning of Conn's fraud, the statute provides Sexton no relief for that delay. The district court therefore did not err when it rejected Sexton's claim that the Commissioner's failure to hold a prompt redetermination hearing violated the Act.

### b. Procedural Due Process Claim

Sexton next argues that the delay in holding her redetermination hearing violated her rights to due process under the Fifth Amendment. She also claims that because of the delay, she was unable to access case files that would have supported her claim. We find that Sexton's due process claim is not likely to succeed because she was granted adequate procedural protections at her redetermination hearing, and because she has not identified additional procedures to which she is constitutionally entitled.

Beneficiaries have a strong property interest in the continued receipt of Social Security benefits. *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976); *Flatford v. Chater*, 93 F.3d 1296, 1305 (6th Cir. 1996). Consequently, the government must implement certain procedures before depriving claimants of that interest. *Mathews*, 424 U.S. at 332. We held in *Hicks* that when the SSA has reason to believe fraud was involved in a benefits application, the government must, at a minimum, "proffer some actual basis for believing that the plaintiffs' evidence is fraudulent"; and

the plaintiff must "have an opportunity to 'rebut the Government's factual assertions before a neutral decisionmaker.'" 909 F.3d at 799 (quoting *Hamdi v. Rumsfeld*, 542 U.S. 507, 533 (2004)); *see also Kirk v. Comm'r of Soc. Sec.*, 987 F.3d 314, 326–327 (4th Cir. 2021) (holding that claimants were denied adequate procedural protections when ALJs excluded evidence from physicians who were associated with Conn and refused to allow plaintiffs to contest that fraud determination).

We also considered whether the plaintiffs were entitled to additional procedures under the three-pronged test articulated in *Mathews v. Eldridge*. *Hicks*, 909 F.3d at 799–804 (citing 424 U.S. at 335). *Mathews* requires courts to weigh three factors to determine "the constitutional adequacy of [administrative] procedures" "prior to the initial termination of benefits": "[f]irst, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and [third], the Government's interest." 424 U.S. at 333–35. The *Hicks* court held that the first and third *Mathews* factors favored the plaintiffs, as "social security disability beneficiaries have a substantial interest in receiving their benefits," and providing beneficiaries the opportunity to rebut allegations of fraud did not impose an extraordinary burden on the government. 909 F.3d at 802–04. Under the second factor, the court concluded that the risk of erroneous deprivation was "intolerably high *whenever* claimants are precluded from rebutting material factual assertions about their case." *Id.* at 801.

But unlike in those cases, Sexton had an adequate opportunity to challenge the SSA's fraud determination. Following *Hicks*, the SSA published an Acquiescence Ruling listing procedures that it would implement to comply with our ruling. Social Security Acquiescence Ruling 19-1(6), *Hicks v. Commissioner of Social Security: Disregarding Evidence During Redeterminations*

*Under Sections 205(u) and 1631(e)(7) of the Social Security Act*, 85 Fed. Reg. 6255-02, 2020 WL 529791 (Feb. 4, 2020). The SSA specified that before an ALJ excluded evidence that was suspected to be fraudulent, the adjudicator "will consider the individual's objection to the disregarding of that evidence." *Id.*

Sexton's second redetermination hearing occurred after the Acquiescence Ruling was issued, and her hearing complied with its requirements. Sexton had the opportunity to object to the agency's assertions of fraud, and to present evidence rebutting those allegations. In support of her claim, she presented her own evidence that included testimony from her mother and a vocational expert. Also, a witness from the OIG testified at her hearing to explain why he believed Sexton's application contained fraudulent information, and the witness was cross-examined by Sexton's attorney. After considering Sexton's supporting evidence and objections, the ALJ ultimately excluded the evidence submitted from Dr. Huffnagle as fraudulent and denied her claim based on the remaining evidence in the record. Because she had the chance to rebut the OIG's assertion of fraud and to present evidence supporting her claim, Sexton has not demonstrated that the procedures employed at her hearing violated her due process rights.

Moreover, she has not identified additional procedures that she was denied at her hearing. Sexton argues that due to the government's delay, she could not obtain necessary case files from Conn's office that may have been burned by Conn or confiscated by the government. But the government asserts that it has provided Sexton with several medical files, including documents from her initial eligibility timeframe. Sexton has not specified which missing files would aid her in challenging the SSA's determination.

We recognize that, because of the delay, Sexton may have been prejudiced in her ability to establish her initial eligibility. But, to the extent she claims that there are no circumstances in

which her redetermination hearing would be constitutional, her claim fails under *Hicks*. 909 F.3d at 813 (holding that cancelling redetermination hearings would be "counterintuitive" and would undermine the general purpose of the statute, which is to "enable the SSA to end fraudulent determinations more quickly than the reopening procedures at that time allowed"). So, although Sexton may have been prejudiced by the delays, she did not show that she was entitled to any additional procedural protections under the Fifth Amendment, beyond what we recognized in *Hicks*. Nor has she specified which materials she lacks to establish her case. Accordingly, the district court did not err by finding she is not likely to succeed on the merits of her due process claim.

### 2. Irreparable Injury

Generally, "a preliminary injunction issued where there is simply no likelihood of success on the merits must be reversed." *S. Glazer's Distribs. of Ohio, LLC v. Great Lakes Brewing Co.*, 860 F.3d 844, 849 (6th Cir. 2017) (quoting *Winnett v. Caterpillar, Inc.*, 609 F.3d 404, 408 (6th Cir. 2010)). But, for the sake of completeness, we next consider whether Sexton would suffer irreparable harm if her request for injunctive relief was denied. *D.T. v. Sumner Cnty. Schs.*, 942 F.3d 324, 327 (6th Cir. 2019). "This Court has the power to grant an injunction pending appeal to prevent irreparable harm to the party requesting such relief during the pendency of the appeal." *Overstreet v. Lexington-Fayette Urb. Cnty. Gov't*, 305 F.3d 566, 572 (6th Cir. 2002). To warrant a preliminary injunction, a party must demonstrate harm that is "certain and immediate," and not "speculative or theoretical." *Mich. Coal. of Radioactive Material Users, Inc. v. Griepentrog*, 945 F.2d 150, 154 (6th Cir. 1991).[2]

---

[2] The denial of an injunction can result in irreparable harm if the underlying claim is based on a constitutional violation. *Overstreet*, 305 F.3d at 578. But because we hold that Sexton is not likely

Sexton claims that she would suffer irreparable emotional and physical harm if her benefits were terminated while her appeal of the ALJ's decision is pending. She claims that she would suffer severe financial injury if her request for injunctive relief was denied, including potential homelessness. She also explains that Social Security benefits are her sole source of income, and her only means to obtain treatment for her health conditions.

We have held that the disruption of government benefits constitutes an irreparable injury when such a loss would adversely affect "the proper maintenance of [one's] health" and the "interruption of the care might cause irreversible physical harm." *Int'l Res., Inc. v. N.Y. Life Ins.*, 950 F.2d 294, 302 (6th Cir. 1991); *see also Welch v. Brown*, 551 F. App'x 804, 813–14 (6th Cir. 2014) (finding irreparable harm where plaintiffs submitted three affidavits describing how losing benefits would deprive them of access to necessary medical treatments). But here, as the district court correctly noted, Sexton does not explain what her essential medical treatment entails, or how her inability to obtain that treatment would result in permanent harm. Her allegations that she would potentially become homeless without the injunction are similarly speculative. While we are sympathetic to Sexton's circumstances, she has not provided any additional evidence to contradict the district court's determination that she failed to show irreparable harm.[3] We therefore hold that the second factor weighs against granting injunctive relief.

### 3. Substantial Harm to Others and Public Interest

Lastly, we must assess whether granting the injunction would harm the opposing party and the public interest. *Wilson v. Williams,* 961 F.3d 829, 844 (6th Cir. 2020). These two factors

---

to succeed on the merits of her due process claim, we find no irreparable harm caused by the alleged constitutional injury.

[3] The record reflects that Sexton has delayed proceedings before the district court by failing to timely file her merits brief. Sexton's delay in litigating her underlying claim undermines her

"merge when the Government is the opposing party." *Nken v. Holder*, 556 U.S. 418, 435 (2009). Sexton claims that the government's interest in avoiding fraudulent payments is "negligible" in comparison to the severe harm she will suffer if she is denied benefits.

The district court did not abuse its discretion in holding that these factors weigh against granting injunctive relief. While the SSA is obligated to provide benefits to qualifying recipients, the government also has a duty to protect public funds by denying benefits to individuals who are not disabled under the Act. *Valot v. Se. Loc. Sch. Dist. Bd. of Educ.*, 107 F.3d 1220, 1227 (6th Cir. 1997). Thus, holding a hearing to determine whether Sexton actually qualifies for benefits serves the public interest, as does halting her benefits while those redetermination proceedings are pending. And here, because we agree with the district court that Sexton likely is not entitled to relief under the Act or the Due Process Clause of the Fifth Amendment, it does not serve the public interest to reinstate her benefits pending resolution of her appeal before the district court.

**III.**

The district court's holding that Sexton failed to establish that she is entitled to injunctive relief is not an abuse of discretion. We therefore **AFFIRM**.

---

allegations of irreparable harm. In some circuits, that delay can be seen as dispositive and is alone sufficient to deny a request for injunctive relief. *Ng v. Bd. of Regents*, 64 F.4th 992, 998–99 (8th Cir. 2023); *Colony Grill Dev., LLC v. Colony Grill, Inc.*, 23-507-cv (L), 23-691-cv (CON), 2023 WL 6890675, at *4 n.4 (2d Cir. Oct. 19, 2023).