The PUTNAM PIT, INC., et al.

v.

CITY OF COOKEVILLE, et al.

No. 2:97–0108.

United States District Court,
M.D. Tennessee,
Northeastern Division.

Sept. 21, 1998.

John W. Allen, Cookeville, TN, Samuel J. Harris, Cookeville, TN, for Putnam Pit, Inc. and Geoffrey Davidian, plaintiffs.

John C. Duffy, Robert H. Watson, Jr., Watson, Hollow & Reeves, P.L.C., Knoxville, TN, Thomas Michael O'Mara, Cookeville, TN, for City of Cookeville and Jim Shipley, defendants.

## MEMORANDUM

HIGGINS, District Judge.

The Court has before it the defendants' motion (filed July 20, 1998; Docket Entry No. 30) for summary judgment; their memorandum (Docket Entry No. 31) in support; and the plaintiffs' response (filed August 10, 1998; Docket Entry No. 36).

The Court has subject matter jurisdiction over the plaintiffs' federal claims under 42 U.S.C. § 1983, pursuant to 28 U.S.C. § 1343.

For the reasons discussed below, the defendants' motion for summary judgment will be granted as to the federal claims. The state law claim under the Tennessee Public Records Act will be dismissed without prejudice.

### I.

The plaintiffs, The Putnam Pit, Inc., and Geoffrey Davidian,[1] filed this action in the Chancery Court of Putnam County, Tennessee, on October 3, 1997, pursuant to 42 U.S.C. § 1983, against the City of Cookeville and Jim Shipley, the city manager of the City of Cookeville, in his official capacity. On October 27, 1997, the defendants filed a notice of removal in federal court. Notice of removal (filed October 27, 1997; Docket Entry No. 1). In their second amended complaint, the plaintiffs allege that the defendants violated their rights to free speech, due process, and equal protection under the law as guaranteed by the First and Fourteenth Amendments of the United States Constitution. *See* second amended complaint (filed September 8, 1998; Docket Entry No. 41). Further, the plaintiffs allege a state law claim under the Tennessee Public Records Act.

The Putnam Pit, Inc., consists of a newspaper and web page, which focuses its commentary on the local government of the City of Cookeville. Mr. Davidian is the editor and publisher of the newspaper and web page. In July of 1997, Mr. Davidian sought a copy of the electronic computer files concerning information regarding parking tickets issued by the City. The City would not provide Mr. Davidian with a copy of the electronic file containing such information or allow him to inspect it but provided Mr. Davidian with hard copies of parking ticket information.[2]

On August 12, 1997, Mr. Davidian asked Mr. Shipley for all "cookie" files in the City's computers that would allegedly show whether City computers had been used to browse internet sites inconsistent with government functions. Mr. Shipley consulted Mr. Steve Corder, the City computer operations manager, who determined the cost to the City to perform such a task. Based on this assessment, Mr. Shipley asked Mr. Davidian to pay a deposit for these costs. However, approximately two weeks later, Mr. Shipley informed Mr. Davidian by letter that, based on Microsoft's definition of a "cookie" file, a "cookie" is "neither the property of the City nor a public record, and accordingly they would not allow the inspection request." Defendants' memorandum (Docket Entry No. 31) at 4.

On October 1, 1997, the plaintiffs again sought access to cookie files and parking tickets by letter sent to Mr. Shipley. On October 2, 1997, Mr. Shipley informed the plaintiffs by e-mail that Mr. Davidian could not inspect the cookie files on the City's computers, and that he would have to reschedule a time to see the police data on the parking tickets, as no one was available to assist him. Mr. Davidian alleges that on

---

**1.** The docket sheet mistakenly reflects that the plaintiff's name is Geoffrey Davididan.

**2.** The plaintiffs complained that some of the information provided by the City, "would be useful to Plaintiffs and some of which would not." Second amended complaint (Docket Entry No. 41) ¶ 6.

October 3, 1997, he requested to see the paper documents of parking tickets and was told to contact the City manager's office. Mr. Davidian alleges that he was told by the City manager's office that he would not be allowed to see any parking tickets that day. On October 31, 1997, the plaintiffs requested by fax and e-mail to inspect the City's internet files including browser and cache files. On that same date, Mr. Shipley responded by e-mail that such files are not public records and are destroyed daily.[3]

In the fall of 1997, the plaintiffs also asked to have a link [4] from the City's web site. Mr. Corder referred the request to Mr. Shipley. Mr. Shipley contends that he was not aware that private businesses had a link from the City's web site, and after learning this information, he first decided to remove all for-profit entities linked from the City's web site. On October 31, 1997, via e-mail, Mr. Shipley informed the plaintiff that the City was declining the plaintiffs' request because links were to be limited to non-profit entities.

After further consideration, however, Mr. Shipley decided that the policy concerning links from the City's web site would be to "limit 'links' to entities that promote the economic welfare, tourism and industry in Cookeville." Defendants' memorandum (Docket Entry No. 31) at 5. As the defendants contend that Putnam Pit, Inc., does not meet that criteria, they have denied the plaintiffs a link from the City's web page to the plaintiffs' web page.

## II.

As provided by Federal Rule of Civil Procedure 56(c), summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law."

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202, 211 (1986). In its consideration of the evidence, the Court must view all facts and inferences to be drawn therefrom in the light most favorable to the non-moving party. Davidson & Jones Dev. Co. v. Elmore Dev. Co., 921 F.2d 1343, 1349 (6th Cir.1991). In order to prevail on a summary judgment motion, the moving party bears the burden of proving the absence of a genuine issue of material fact concerning an essential element of the opposing party's action. Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265, 274 (1986); Davidson & Jones Dev. Co., 921 F.2d at 1349; Street v. J.C. Bradford & Co., 886 F.2d 1472, 1479 (6th Cir.1989). An issue of material fact is one which, under the substantive law governing the issue, might affect the outcome of the suit. Liberty Lobby, 477 U.S. at 248, 106 S.Ct. at 2510, 91 L.Ed.2d at 211.

In addition, a dispute about the material fact must be genuine, that is, "the evidence is such that a reasonable jury could return a verdict for the non-moving party." [5] Id. at 248, 106 S.Ct. at 2510, 91 L.Ed.2d at 211–12. Since the preponderance of the evidence standard is used in this determination, more than a mere scintilla of evidence in support of the plaintiff's position is required. Id. at 252, 106 S.Ct. at 2512, 91 L.Ed.2d at 214.

Once a motion for summary judgment has been made, "the non-moving party bears the responsibility to demonstrate that summary judgment is inappropriate under Rule 56(e)." Davidson & Jones Dev. Co., 921 F.2d at 1349. The non-moving party may not merely rest on conclusory allegations contained in the complaint, but must respond with affirmative evidence supporting its claims and establishing the existence of a genuine issue of material fact. Celotex, 477 U.S. at 324, 106 S.Ct. at 2553, 91 L.Ed.2d at 274; Cloverdale Equip. Co. v. Simon Aerials, Inc., 869

---

3. In their memorandum, however, the plaintiffs state that on November 3, 1997, Mr. Davidian was allowed to view internet files, but the inspection revealed that no information was available. Mr. Davidian alleges that he asked for another inspection later that day, but was refused by the defendants.

4. A link allows an internet user to move from one web site to another.

5. The Supreme Court further explained that a court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Liberty Lobby, 477 U.S. at 251–52, 106 S.Ct. at 2512, 91 L.Ed.2d at 214.

F.2d 934, 937 (6th Cir.1989). While the disputed issue does not have to be resolved conclusively in favor of the non-moving party to defeat summary judgment, "sufficient evidence supporting the claimed factual dispute" must be shown, thereby requiring resolution of the parties' differing versions of the truth by a jury or judge. *Liberty Lobby*, 477 U.S. at 249, 106 S.Ct. at 2510, 91 L.Ed.2d at 212; *First Nat'l Bank v. Cities Serv. Co.*, 391 U.S. 253, 289, 88 S.Ct. 1575, 1592, 20 L.Ed.2d 569, 592 (1968).

### III.

The plaintiffs allege violations of 42 U.S.C. § 1983, claiming the defendants have denied Mr. Davidian access to public records and to the City's web page and have acted arbitrarily, capriciously, and inequitably in the application of their policies.

Section 1983 provides a remedy against any person who, under color of state law, deprives another of rights protected by the United States Constitution. There are two essential elements to an action under Section 1983:(1) whether the conduct complained of was committed by a person acting under color of state law; and (2) whether the conduct deprived a person of rights, privileges, or immunities secured by the Constitution or laws of the United States. 42 U.S.C. § 1983.

The plaintiffs argue that the defendants actions have violated the plaintiffs' rights to free speech and freedom .of the press in violation of the First Amendment. The plaintiffs also contend that their rights to due process and equal protection under the Fourteenth Amendment have been violated by the defendants.

### A. First Amendment

#### 1. right of access to computer files

The plaintiffs concede that "denial of access to the parking ticket records to download in electronic form is not a *per se* violation of the First Amendment." Plaintiffs' memorandum (Docket Entry No. 36) at 5. However, the plaintiffs argue that "denial to inspect the computer records as well as paper records of parking violations" is a violation of the First Amendment. *Id.* The

plaintiffs further argue that "the First Amendment was implicated when the Plaintiffs were denied access to the Internet files." *Id.* at 6.

The United States Supreme Court has held:

The First and Fourteenth Amendments bar government from interfering in any way with a free press. The Constitution does not, however, require government to accord the press special access to information not shared by members of the public generally. It is one thing to say that a journalist is free to seek out sources of information not available to members of the general public, that he is entitled to some constitutional protection of the confidentiality of such sources, and that government cannot restrain the publication of news emanating from such sources. It is quite another thing to suggest that the Constitution imposes upon government the affirmative duty to make available to journalists sources of information not available to members of the public generally. That proposition finds no support in the words of the Constitution or in any decision of this Court.

*Pell v. Procunier*, 417 U.S. 817, 834, 94 S.Ct. 2800, 2810, 41 L.Ed.2d 495, 508 (1974) (footnotes omitted) (citations omitted). *See also, Branzburg v. Hayes*, 408 U.S. 665, 684, 92 S.Ct. 2646, 2658, 33 L.Ed.2d 626, 641 (1972) ("It has generally been held that the First Amendment does not guarantee the press a constitutional right of special access to information not available to the public generally."); *see Zemel v. Rusk*, 381 U.S. 1, 17, 85 S.Ct. 1271, 1281, 14 L.Ed.2d 179, 190 (1965) ("The right to speak and publish does not carry with it the unrestrained right to gather information.") Moreover, in *Houchins v. KQED, Inc.*, 438 U.S. 1, 98 S.Ct. 2588, 57 L.Ed.2d 553 (1978), the Supreme Court held that "[n]either the First Amendment nor the Fourteenth Amendment mandates a right of access to government information or sources of information within the government's control." *Id.* at 15, 98 S.Ct. at 2597, 57 L.Ed.2d at 565.[6]

---

**6.** The Supreme Court has noted an exception to this general rule in cases involving the First Amendment right to attend criminal proceedings.

*See Press–Enterprise Co. v. Superior Court*, 478 U.S. 1, 8, 106 S.Ct. 2735, 2740, 92 L.Ed.2d 1, 9–10 (1986); *Richmond Newspapers, Inc. v. Virgi-*

In the instant case, there is no genuine issue of material fact on the issue of whether the information that the plaintiffs have requested is available to members of the public generally. In the defendants' statement of undisputed facts, they state that

> [e]xcept for one occasion where Geoffrey Davidian was allowed to see on one of the City computer screens that Internet "cookie" files are not retained on the City's computers, the City of Cookeville has not now and never has allowed the general public nor members of the press to inspect records of Internet usage on City computers.

Defendants' statement (filed July 20, 1998; Docket Entry No. 35) ¶ 1. The plaintiffs' response is "[a]dmitted." Plaintiffs' response to defendants' statement (filed August 10, 1998; Docket Entry No. 37) ¶ 1. Likewise, the defendants state that "[t]he City of Cookeville does not now nor has it ever made parking ticket data in electronic form available to the general public or press." Defendants' statement (Docket Entry No. 35) ¶ 2. Again, the plaintiffs' response is "[a]dmitted." Plaintiffs' response to defendants' statement (Docket Entry No. 37) ¶ 2. Thus, there appears to be no genuine issue of material fact on this issue.

The plaintiffs argue that the Tennessee Public Records Act grants the public access to the records at issue in this case. While this may be true and could consequently result in a violation of state law, that Act does not, in and of itself, mean that the City of Cookeville has, in actuality, traditionally allowed the public access to the records at issue. As that is the crucial issue in determining whether the plaintiffs have a First Amendment right to access the City's computer records, and there is an absence of a genuine issue of material fact regarding that issue, the defendants' motion for summary judgment must be granted as to the federal claim based on the First Amendment.

The Court also notes that the defendants state that the "[p]laintiffs have ready access to the parking ticket data in paper, hard copy form, the form in which it is and has been available to the public generally." Defendants' memorandum (Docket Entry No. 31)

at 9. The plaintiffs argue, however, that they were denied access to parking ticket records in their paper form on October 3, 1997, and thus, they still have a First Amendment claim on that basis. The Court disagrees.

According to the plaintiffs' complaint, Mr. Davidian was simply told he "would not be allowed to see any parking ticket records *that day.*" Second amended complaint (Docket Entry No. 41) ¶ 14 (emphasis added). It is clear that the plaintiffs have been given hard copies of parking ticket records on other occasions. Thus, the plaintiffs base their First Amendment claim on one incident in which they were told that they could not see records on that day. Such an isolated incident does not rise to the level of a First Amendment claim. Accordingly, the defendants' motion for summary judgment on the plaintiffs' First Amendment claim concerning access to computer files shall be granted.

### 2. right to be linked from web site

The plaintiffs argue that the City's web page is a public forum because it has "allow[ed] other web pages to link up with the City's page." Plaintiffs' memorandum (Docket Entry No. 36) at 11. The defendants, on the other hand, assert that the web page is not a public forum because only the City is allowed to communicate its message on the web page, and that message is limited to City government services and the benefits and opportunities of living in or visiting Cookeville. The City concedes, however, that it does allow two entities to have a link from the City's web page because they promote economic welfare, tourism, and industry in Cookeville. Thus, the defendants argue that, at the most, the City's web page constitutes a non-public forum, which is subject only to the reasonableness test.

#### a. forum analysis

"[T]he Court [has] identified three types of fora: the traditional public forum, the public forum created by government designation, and the nonpublic forum." Traditional public fora are defined by the objective characteristics of the property, such as whether, "by long tradition or by

*nia,* 448 U.S. 555, 580, 100 S.Ct. 2814, 2829, 65 L.Ed.2d 973, 991–92 (1980).

government fiat," the property has been "devoted to assembly and debate." The government can exclude a speaker from a traditional public forum "only when the exclusion is necessary to serve a compelling state interest and the exclusion is narrowly drawn to achieve that interest." Designated public fora, in contrast, are created by purposeful governmental action. "The government does not create a [designated] public forum by inaction or by permitting limited discourse, but only by intentionally opening a nontraditional public forum for public discourse." Hence "the Court has looked to the policy and practice of the government to ascertain whether it intended to designate a place not traditionally open to assembly and debate as a public forum." If the government excludes a speaker who falls within the class to which a designated public forum is made generally available, its action is subject to strict scrutiny.

Other government properties are either nonpublic fora or not fora at all. The government can restrict access to a nonpublic forum "as long as the restrictions are reasonable and [are] not an effort to suppress expression merely because public officials oppose the speaker's view." *Arkansas Educ. Television Comm'n v. Forbes*, 523 U.S. 666, ——, 118 S.Ct. 1633, 1641, 140 L.Ed.2d 875, 886–87 (1998) (citations omitted). In *Cornelius v. NAACP Legal Defense and Educational Fund, Inc.*, 473 U.S. 788, 803, 105 S.Ct. 3439, 3449, 87 L.Ed.2d 567, 580 (1985), the Supreme Court held that "[n]ot every instrumentality used for communication, however, is a traditional public forum or a public forum by designation." Likewise, in *Lehman v. City of Shaker Heights*, 418 U.S. 298, 304, 94 S.Ct. 2714, 2718, 41 L.Ed.2d 770, 778 (1974), the Supreme Court held that "[w]ere we to hold to the contrary, display cases in public hospitals, libraries, office buildings, military compounds, and other public facilities, immediately would become Hyde Parks open to every would-be pamphleteer and politician. This the Constitution does not require."

 The traditional public forum includes public streets and parks which "have immemorially been held in trust for the use of the public and, time out of mind, have been used for purposes of assembly, communicating thoughts between citizens, and discussing public questions." *Hague v. Comm. for Indus. Org.*, 307 U.S. 496, 515, 59 S.Ct. 954, 964, 83 L.Ed. 1423, 1436 (1939) (Roberts, J., concurring). ."The Court has rejected the view that traditional public forum status extends beyond its historic confines." *Forbes*, 523 U.S. at ——, 118 S.Ct. at 1641, 140 L.Ed.2d at 887. It is clear that unlike public streets and parks, web pages on the internet have not by long tradition or government fiat been devoted to assembly and debate; nor has the City's web page immemorially been held in trust for the use of the public. Accordingly, the Court finds that the City's web page does not fit into the mold of the traditional public forum.

 A designated public forum is created when the government purposefully "open[s] additional properties for expressive use by the general public or by a particular class of speakers." *Id.* The *Forbes* Court goes on to explain that "the government must intend to make the property 'generally available' to a class of speakers.... A designated public forum is not created when the government allows selective access for individual speakers rather than general access for a class of speakers." *Id.* at ——, 118 S.Ct. at 1642, 140 L.Ed.2d at 887 (citation omitted). The Court further emphasized that the government does not create a designated public forum

> when it does no more than reserve eligibility for access to the forum to a particular class of speakers, whose members must then, as individuals, "obtain permission" to use it.
>
> . . . .
>
> The *Cornelius* distinction between general and selecting access furthers First Amendment interests. By recognizing the distinction, we encourage the government to open its property to some expressive activity in cases where, if faced with an all-or-nothing choice, it might not open the property at all. That this distinction turns on governmental intent does not render it unprotective of speech. Rather, it reflects the reality that, with the exception of traditional public fora, the government retains the choice of whether to designate its property as a forum for specified classes of speakers.

*Id.* at ——, 118 S.Ct. at 1642, 140 L.Ed.2d at 888 (citation omitted).

 Based on this analysis, the Court finds that the City of Cookeville has not created a designated public forum by establishing a web page and allowing links on a selective basis. The plaintiffs argue that the web page was designated as a public forum by the City because at the time Mr. Davidian made his request to have a link from the City's web page, other web pages were allowed to have a link from the City's web page after asking Mr. Corder to allow them to do so.

First, the Court notes that the City now has a policy in effect regarding links from its web page which was not in effect at the time of Mr. Davidian's request. Even though the City's policy may have been spurred by Mr. Davidian's request, the Supreme Court has held that the government "is not required to indefinitely retain the open character of the facility." *Perry Educ. Assn. v. Perry Local Educators' Assn.*, 460 U.S. 37, 46, 103 S.Ct. 948, 955, 74 L.Ed.2d 794, 805 (1983). Thus, even if at one time links from the City's web page were unintentionally generally available to the public or a class of speakers,[7] the City has now established a policy of selective access to the links, and it was the City's prerogative to do so.

Second, the Court recognizes that at the time Mr. Davidian had made his request, Mr. Corder had assumed authority over the links on the web page because he was the computer manager but not because he was the individual responsible for making such decisions. Mr. Shipley stated in his deposition that until Mr. Corder brought Mr. Davidian's link request to him, he "didn't even know what a local link was." Exhibits (filed July 20, 1998; Docket Entry No. 32) tab 3, at 52. Once Mr. Shipley found out what a local link

was and that private businesses were linked from the City's web site, he removed them[8] because he didn't "like the City of Cookeville to endorse any local business, endorse any attorney's practice, or air-conditioning service, or anything else, and I felt that would give the impression we were doing that." *Id.* at 54.

Mr. Shipley further testified that he, as the City manager, is responsible for setting the policy for linking from the City's web page and that he decides "that a particular web page has or does not have the type of information" that would permit it to be linked from the City's web page. *Id.* at 58. It is undisputed that Mr. Shipley is the decision-maker for the City in this respect, and not Mr. Corder. As noted earlier, the Supreme Court has held that the " 'government does not create a [designated] public forum by inaction or by permitting limited discourse, but only by *intentionally* opening a nontraditional public forum for public discourse.' " *Forbes*, 523 U.S. at ——, 118 S.Ct. at 1641, 140 L.Ed.2d at 886 (citation omitted) (emphasis added). Accordingly, Mr. Corder's actions are irrelevant, as it appears that Mr. Corder accidently assumed authority for the links by virtue of his position as computer manager, when no such authority existed.

Once the nature of the links was realized by Mr. Shipley, he, as the City manager responsible for making such decisions, established a policy concerning links from the City's web site. Mr. Shipley first decided that links should only be allowed for entities which operated on a not-for-profit basis. However, after further consideration, Mr. Shipley decided that the better policy was one that comported with the purpose of the web page, which was to promote tourism, economic welfare, and industry in Cookeville.[9] It is clear that the City has done "no

7. The Court notes that even at the time of Mr. Davidian's request, entities still had to request to be linked from the City's web page. Links from the City's web page could not be made by an entity on its own without any input from the City.

8. The plaintiffs complain that Mr. Davidian made his request on October 15, 1997, which was denied, while other entities were allowed to remain linked from the City's web page until November 3, 1997. Such a complaint does not rise to the level of a constitutional violation where it

is does not appear that the delay was intentional, but was merely the result of a lack of time and resources to promptly effectuate the removal of the entities.

9. Mr. Shipley explained the City's policy in his deposition as follows:

Let me tell you why, in my opinion, the City has a web page. It is to give information on the Internet about the city. It is not a public forum for people to express their opinions. It is not a public bulletin board for people to

more than reserve eligibility for access to the forum to a particular class of speakers, whose members must then, as individuals, 'obtain permission' to use it." *Forbes,* 523 U.S. at ——, 118 S.Ct. at 1642, 140 L.Ed.2d at 888 (citations omitted). Accordingly, the Court finds that the City has not created a designated public forum by allowing selective access to links on its web page.

### b. non-public forum

As the Court has rejected the plaintiffs' contention that the City's web page is a traditional public forum or a designated public forum, the City's web page must be a non-public forum.

> Control over access to a nonpublic forum can be based on subject matter and speaker identity so long as the distinctions drawn are reasonable in light of the purpose served by the forum and are viewpoint neutral. Although a speaker may be excluded from a nonpublic forum if he wishes to address a topic not encompassed within the purpose of the forum, or if he is not a member of the class of speakers for whose special benefit the forum was created, the government violates the First Amendment when it denies access to a speaker solely to suppress the point of view he espouses on an otherwise includible subject.
>
> . . . .
>
> The Government's decision to restrict access to a nonpublic forum need only be *reasonable;* it need not be the most reasonable or the only reasonable limitation. In contrast to a public forum,. a finding of strict incompatibility between the nature of the speech or the identity of the speaker and the functioning of the nonpublic forum is not mandated.

*Cornelius,* 473 U.S. at 806–808, 105 S.Ct. at 3451–52, 87 L.Ed.2d at 582–584 (citations omitted).

Based on the current policy of the City of Cookeville, only two entities are allowed to be linked from the City's web page, the Upper Cumberland Virtual Community [10] and Tennessee Technological University. The defendants assert that "[t]he decision of the City of Cookeville to limit the subject matter of its web site to the promotion of commerce is reasonable in light of the disruptions to the City's ability to communicate its own messages if it were required to allow any and every other operator of a web site to be linked to the City's web site." Defendants' memorandum (Docket Entry No. 31) at 13. The Court agrees.

The very definition of a non-public forum allows the City to exclude the plaintiffs on the basis of subject matter and speaker identity. In *Perry,* the Supreme Court pointed out that:

> Implicit in the concept of the nonpublic forum is the right to make distinctions in access on the basis of subject matter and speaker identity. These distinctions may be impermissible in a public forum but are inherent and inescapable in the process of limiting a nonpublic forum to activities compatible with the intended purpose of the property. The touchstone for evaluating these distinctions is whether they are reasonable in light of the purpose which the forum at issue serves.

*Perry,* 460 U.S. at 49, 103 S.Ct. at 957, 74 L.Ed.2d at 807. Accordingly, the Court rejects the plaintiffs' argument that they should be allowed a link from the City's web page because, in their opinion, Putnam Pit, Inc.'s web page promotes Cookeville in that "the public will view Cookeville favorably if they see a town with a news publication that seeks to root out corruption." Plaintiffs' memorandum (Docket Entry No. 36) at 12. The plaintiffs' opinion is irrelevant where the defendants have acted reasonably in denying the plaintiffs a link from the City's web page

---

advertise their businesses. I didn't know what a link was. I just—when we set out to establish a web page, I thought it was a good idea. It will put us out there on the Internet so people might see Cookeville. We might get a business out of it. We will promote the lakes around the area, just our general community. I didn't think about a local link, but I do not think it is a public forum for anything. I think it is a bulletin board about the City of Cookeville. "Here we are."
Exhibits (Docket Entry No. 32) tab 3, at 57.

**10.** Mr. Shipley testified in his deposition that the virtual community page includes "information about the City of Cookeville, lodging, restaurants, theaters, all those things." Exhibits (Docket Entry No. 32) tab 3, at 53.

and where the plaintiffs' goals are incompatible with the City's web page of promoting tourism, economic welfare, and industry in Cookeville.

The plaintiffs also argue that "[t]he Putnam Pit was not linked because the city employee/decision maker deemed the publication controversial." Plaintiffs' memorandum (Docket Entry No. 36) at 12. The Supreme Court has held that

> [a]lthough the avoidance of controversy is not a valid ground for restricting speech in a public forum, a nonpublic forum by definition is not dedicated to general debate or the free exchange of ideas. The First Amendment does not forbid a view-point-neutral exclusion of speakers who would disrupt a nonpublic forum and hinder its effectiveness for its intended purpose.

*Cornelius,* 473 U.S. at 811, 105 S.Ct. at 3453, 87 L.Ed.2d at 585; *see also, Perry,* 460 U.S. at 53, 103 S.Ct. at 959, 74 L.Ed.2d at 809 ("[W]hen government property is not dedicated to open communication the government may—without further justification—restrict use to those who participate in the forum's official business."). Accordingly, the Court finds that the plaintiffs' argument is without merit.

The Court also notes that the City is justified in its actions because there are alternative channels for the plaintiffs to spread their message. In *Cornelius,* the Supreme Court noted that

> The First Amendment does not demand unrestricted access to a nonpublic forum merely because use of that forum may be the most efficient means of delivering the speaker's message. Rarely will a nonpublic forum provide the only means of contact with a particular audience. Here, as in *Perry Education Assn.,* the speakers have access to alternative channels, including direct mail and in-person solicitation outside the workplace, to solicit contributions from federal employees.

*Cornelius,* 473 U.S. at 809, 105 S.Ct. at 3452, 87 L.Ed.2d at 584 (citations omitted). In the instant case, Putnam Pit, Inc., consists of not only the web page but also a newspaper, which appears to contain the same information as the web page. In addition, Mr. Davidian admits that it is not difficult to locate the web site on the internet and that internet users who may not have access to the newspaper version may easily access the plaintiffs' web site by simply entering the search term "Cookeville, Tennessee" after accessing the internet. Accordingly, the Court finds that the defendants' denial of a link from the City's web page does not result in the plaintiffs having no medium or access points through which to spread their message.

Based on the foregoing analysis and considerations, the Court finds that the defendants' motion for summary judgment shall be granted on the plaintiffs' First Amendment claim of a right to have a link from the City's web page.

### B. Due Process

In their motion for summary judgment, the defendants argue first that "[a] plaintiff cannot invoke notions of substantive due process[11] where an explicit constitutional amendment or textual provision governs the same governmental action at issue." Defendants' memorandum (Docket Entry No. 31) at 14. The defendants base their statement on *Graham v. Connor,* 490 U.S. 386, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989). The Supreme Court in *Graham* held:

> Today we make explicit what was implicit in *Garner's* analysis, and hold that *all* claims that law enforcement officers have used excessive force—deadly or not—in the course of an arrest, investigatory stop, or other "seizure" of a free citizen should be analyzed under the Fourth Amendment and its "reasonableness" standard, rather than under a "substantive due process" approach. Because the Fourth Amendment provides an explicit textual source of constitutional protection against this sort of physically intrusive governmental conduct, that Amendment, not the more gen-

---

11. The defendants address the plaintiffs' due process claim as one of substantive due process. The plaintiffs did not specify in their second amended complaint which type of due process claim they were bringing, and in their response to the defendants' motion for summary judg-ment, the plaintiffs discuss substantive due process but do not mention procedural due process. Accordingly, the plaintiffs' due process claim has been considered as a substantive due process claim only.

eralized notion of "substantive due process," must be the guide for analyzing these claims.

*Graham,* 490 U.S. at 395, 109 S.Ct. at 1871, 104 L.Ed.2d at 454–55. A fair reading of *Graham* reveals that the Supreme Court's holding was limited to claims involving excessive force and the Fourth Amendment. Accordingly, the Court rejects the defendants' argument.

The defendants also move for summary judgment on the plaintiffs' substantive due process claim on the grounds that the City's actions are rationally related to a legitimate state interest.[12] The plaintiffs argue that the defendants are violating the plaintiffs' due process rights by acting arbitrarily and capriciously with regard to the plaintiffs' requests for public records.[13]

 "The right not to be subject to 'arbitrary or capricious' action by a state either by legislative or administrative action is commonly referred to as a 'substantive due process right.'" *Pearson v. City of Grand Blanc,* 961 F.2d 1211, 1216–17 (6th Cir.1992). The Sixth Circuit has held that:

> [w]here a substantive due process attack is made on state administrative action, the scope of review by the federal courts is extremely narrow. To prevail, a plaintiff must show that the state administrative agency has been guilty of "arbitrary and capricious action" in the strict sense, meaning "that there is no rational basis for the ... [administrative] decision."

*Pearson,* 961 F.2d at 1221 (quoting *Stevens v. Hunt,* 646 F.2d 1168, 1170 (6th Cir.1981)).[14] Under a rationality standard, the plaintiffs "bear the burden to show that Defendants' decision was not rationally related to a legitimate state interest." *Valot v. Southeast Local Sch. Dist. Bd. of Educ.,* 107 F.3d 1220, 1228 (6th Cir.1997).

The plaintiffs state that "[a]s to the arbitrary and capricious nature of the Defendants' alleged acts, consider what rational basis the Defendant Shipley had for his requiring a deposit calculated down to the very penny before Plaintiffs could see the Internet files." Plaintiffs' memorandum (Docket Entry No. 36) at 15. The defendants argue that "[p]rotecting the public fisc, including the labor expense associated with record requests, is a legitimate government interest." Defendants' memorandum (Docket Entry No. 31) at 16.

 Protection of the public fisc is certainly a legitimate government interest. *See Valot,* 107 F.3d at 1228 (holding that the protection of the public fisc is "not only legitimate, but also laudable"). The Court must also determine whether the defendants' decision to require Mr. Davidian to pay a deposit was rationally related to protection of the City's fiscal resources.

Gail Fowler, Mr. Shipley's administrative assistant, stated in her affidavit that she did a breakdown of Mr. Davidian's record requests and employee time spent processing same which I could document. From

12. Although the plaintiffs state in their memorandum that "[w]hile one could argue that a fundamental right, i.e. freedom of speech and the press, would require a stricter scrutiny, Defendants can not justify their actions as being anything other than an irrational attempt to obstruct and hinder Plaintiffs because of animosity developed due to the criticism published in their newspaper." Plaintiffs' memorandum (Docket Entry No. 36) at 13. With the exception of the introductory phrase mentioning strict scrutiny, the plaintiffs' substantive due process argument focuses on a discussion of the rational basis test in the context of alleged arbitrary and capricious actions taken by the defendants. Furthermore, the plaintiffs' second amended complaint makes no mention of the First Amendment in its allegations concerning its due process claim. Accordingly, the Court finds that the plaintiffs' due process claim involves a claim of arbitrary and capricious action by the defendants and thus the

applicable test is the rational basis test. The Court notes, however, that even if the plaintiffs' substantive due process claim were somehow construed to include an allegation of a violation of the First Amendment, the Court has already found that the First Amendment does not guarantee the plaintiffs a constitutional right of access to information not available to the public generally. Thus, the defendants have not impinged on a fundamental right protected by the Constitution and strict scrutiny does not apply.

13. The Court notes that in the plaintiffs' second amended complaint in which they allege a violation of due process, there is no mention of the plaintiffs' claim regarding their right to a link from the City's web page.

14. Although *Pearson* involved zoning ordinances and state administrative action, the Court finds this language instructive in the instant case.

May of 1995 through August of 1997, by a conservative estimate, Mr. Davidian's record requests consumed seventy-five to eighty hours of employee time at a conservatively estimated cost of about $2,500.00 to the City of Cookeville.... No other individual or entity has made record and information requests remotely comparable to the volume of records and the information requested by Mr. Davidian.

Exhibits (Docket Entry No. 32) tab 4, ¶¶ 4–5. Moreover, Mr. Shipley based his cost estimate and arrived at the deposit figure based on Mr. Corder's rough estimate that it would take 30 to 40 hours to analyze approximately 35 computers, "finding the information, copying the information to a floppy disk, and sorting it, and putting it in a manner in which we could efficiently give it to Mr. Davidian." Authentication of deposition testimony (filed July 7, 1998; Docket Entry No. 29) attachment at 9.[15] Based on this information, the Court finds that the defendants had a rational basis for their decision.

 Accordingly, the Court finds that the defendants had both a legitimate government interest and a rational basis for their decision. Because "the application of this deferential standard of review is a matter of law for the court" (*Pearson,* 961 F.2d at 1222) and not a question of fact for the jury, the Court shall grant the defendants' motion for summary judgment on the plaintiffs' substantive due process claim on the basis of arbitrary and capricious governmental action.

### C. Equal Protection

 The defendants argue in their motion for summary judgment that the plaintiffs cannot establish a claim under equal protection based on the same reasons that the plaintiffs' due process claim fails to survive the motion for summary judgment, that is, because of the rational basis standard.

The general rule in equal protection analysis is that state action is presumed to be valid and will be sustained if the classification drawn by the state is rationally related to a legitimate state interest. That rule gives way, however, where a state classifies by race, alienage, or national origin, or where a state impinges on personal rights protected by the Constitution; such action is subjected to strict scrutiny and will be sustained only if suitably tailored to serve a compelling state interest.

*Valot,* 107 F.3d at 1229. It is clear that the Defendants have not classified the plaintiffs on suspect or quasi-suspect grounds. In addition, the Court has already found that the First Amendment does not guarantee the plaintiffs a constitutional right of access to information not available to the public generally. Accordingly, the defendants have not impinged on a fundamental right protected by the Constitution, and the defendants' decision must be reviewed on the basis of rationality.

 The Court finds that for the same reason that the defendants' actions survive rationality review under the plaintiffs' due process claim, the defendants' actions pass muster on the plaintiffs' equal protection claim. The plaintiffs have failed to show that the defendants' actions were not rationally related to a legitimate state interest. Thus, Plaintiffs' equal protection claim must fail. Accordingly, the Court shall grant the defendants' request for summary judgment on the plaintiffs' claim of equal protection.

---

**15.** The plaintiffs complain that Mr. Corder was providing them with information that they did not request and therefore purposefully inflated the time it would take to fulfill the plaintiffs' request. Mr. Corder testified in his deposition that he arrived at the estimate "off the top of my head when Mr. Shipley made the request, and that is the first number I came up with. That is the number that I gave to him." Authentication of deposition testimony (Docket Entry No. 29) attachment at 13. Mr. Corder further testified that he did not tell Mr. Shipley that the cookie files which Mr. Davidian requested were actually deleted daily because Mr. Corder "assumed that what Mr. Davidian really wanted was history files and browser cache files ... because everybody that knows anything about it knows that cookie files don't give you an accurate representation of where a computer has been on the Internet." *Id.* at 30. There is no indication that Mr. Corder or Mr. Shipley acted in bad faith in estimating the time and cost to the City to fulfill Mr. Davidian's request. In fact, it is clear that Mr. Corder based his time estimate on his background in computers and his experience with the City's computers as computer operations manager.

## D. Supplemental Jurisdiction

As the Court dismisses with prejudice the plaintiffs' federal claims against the defendants, it declines to exercise supplemental jurisdiction over the plaintiffs' pending state claim involving the Tennessee Public Records Act.[16] *See* 28 U.S.C. § 1367(c)(3); *see also Cameron v. Seitz,* 38 F.3d 264, 276 (6th Cir. 1994) ("With the dismissal of the [federal] claim, original jurisdiction over the state . . . claim is lacking, and the district court has discretion as to whether to continue to exercise supplemental jurisdiction over it."). Thus, the Court shall dismiss without prejudice the plaintiffs' state claim.

## IV.

The Court concludes that the defendants' motion for summary judgment on the plaintiffs' First Amendment claim shall be granted. The Court likewise shall grant the defendants' motion for summary judgment on the plaintiffs' substantive due process and equal protection claims. Accordingly, as the plaintiffs' federal claims shall be dismissed with prejudice, the plaintiffs' state claim under the Tennessee Public Records Act shall be dismissed without prejudice.

An appropriate order shall be entered.

## ORDER

In accordance with the memorandum contemporaneously entered, the defendants' motion (filed July 20, 1998; Docket Entry No. 30) for summary judgment is granted as to the plaintiffs' federal claims.

Accordingly, the plaintiffs' First Amendment, substantive due process, and equal protection claims are dismissed with prejudice.

The plaintiffs' state claim under the Tennessee Public Records Act is dismissed without prejudice.

Entry of this order constitutes the judgment in this action.

It is so ORDERED.

---

16. The plaintiffs also "seek injunctive relief that they will be allowed unobstructed access without delay in obtaining public records maintained by the City of Cookeville, Tennessee, and that the Defendants be enjoined from any further acts that constitute retaliation for their publication of criticism." Second amended complaint (Docket Entry No. 41) ¶ 32. Insofar as the request for injunctive relief arises from the plaintiffs' federal claims, this issue is now moot. Furthermore, any request for injunctive relief arising out of an alleged violation of the Tennessee Public Records Act will not be considered by this Court as the state claim is being dismissed without prejudice.